### CLANCY v. DUTTON et al.

(Supreme Court, Appellate Division, Second Department. November 27, 1908.)

1. SHIPPING (§ 147*)—CARRIAGE OF GOODS—CONTRACT FOR TRANSPORTATION.
   Where the captain of a vessel contracted with plaintiff to carry a full cargo of stone, which would be 300 tons, at a certain price per ton, and afterward, by claiming that there was enough stone on the dock to make a full cargo, prevented the loading of a full cargo before the vessel sailed, plaintiff was liable only for the contract freight on the number of tons actually carried.

   [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 147.*]

2. PAYMENT (§ 82*)—"VOLUNTARY PAYMENT."
   To constitute a voluntary payment, the person paying must have the freedom of exercising his will, and not act under compulsion, and hence,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

where a captain of a vessel holding possession of property of a shipper refused to deliver it up unless the shipper paid him a larger amount of freight than was due, and the shipper paid the sum demanded to obtain possession of his property, the payment was under compulsion and could be recovered back.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 255; Dec. Dig. § 82.*

For other definitions, see Words and Phrases, vol. 8, pp. 7352–7354, 7830.]

Appeal from Municipal Court, Borough of Queens, First District.

Action by John J. Clancy against James E. Dutton, and others. Judgment for plaintiff, and defendants appeal. Modified and affirmed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Edward L. Owen, for appellants.
James J. Conway, for respondent.

RICH, J. On November 22, 1907, the plaintiff entered into a written contract with the captain of a schooner owned by the defendants, for the transportation of stone from Quincy, Mass., to the city of New York, which obligated him to use the whole of the vessel, with the exception of the cabin, room for the crew, and for the storage of provisions, and to provide and furnish a "cargo of stone under and on deck," which meant a full cargo. He was to pay $1.30 per gross ton, delivered. The carrying capacity of the schooner was from 300 to 320 tons. The only issue of fact involved is as to what took place immediately preceding the sailing of the vessel for New York, and this has been resolved in favor of the plaintiff. The testimony of the plaintiff's brother is to the effect that, in the late afternoon of the day before the vessel sailed, its captain informed him that there was stone enough on the dock to complete the loading of the vessel and make a full cargo of 300 tons; that he was going to Boston, and if plaintiff's brother wanted him to he would hire a tugboat, and sail at noon on the following day, to which plaintiff's brother replied, "All right, if he had sufficient cargo, to hire the tugboat." This is denied by the captain, who testified that plaintiff's brother told him he would have the boat loaded that day and directed him to get a tug, and that he then informed plaintiff's brother that the vessel was not fully loaded and could take on stone until she was lowered another foot in the water. There is sufficient evidence to sustain the finding of the municipal justice, and the question of whether or not the plaintiff was bound under his contract to furnish a cargo of at least 300 tons becomes immaterial. The captain of the vessel, having prevented the loading of more stone than was on the vessel when she sailed, limited the liability of plaintiff to the compensation of $1.30 per ton for the number of tons actually carried. When the schooner reached the dock in New York, the captain refused to permit any of the stone to be unloaded or removed from the vessel until the plaintiff had paid him the freight for a full cargo of 300 tons, amounting to $390. The plaintiff thereupon advised with counsel and was informed that, the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

stone being in the possession of the defendants, they had the right to retain it until the freight was paid. Plaintiff, accordingly, paid the captain, under protest, and took from him the following receipt:

"$390 00/100.                                    Long Island City, Jan. 2, 1908.

"Received from Clancy Granite Work the sum of three hundred and ninety dollars demanded as payment for cargo of stone from Quincy, Mass. Amt. protested according to contract.

"F. J. Martin, Master of Sch. Helena."

The cargo weighed 208⅓ tons.

It is contended that this payment was voluntary, and by operation of law precludes the plaintiff's recovery. In this contention the defendants are in error. To constitute a voluntary payment the party paying must have had the freedom of exercising his will. When he acts under any species of compulsion, the payment is not voluntary, and if a party has in his possession property belonging to another, and refuses to deliver such property to that other, unless the latter pays him a sum of money which he has no right to receive, and in order to obtain possession of his property the owner pays that sum, the money so paid is a payment made by compulsion and may be recovered back. Harmony v. Bingham, 12 N. Y. 99, 117, 62 Am. Dec. 142; Stenton v. Jerome and Others, 54 N. Y. 480; Scholey v. Mumford, 60 N. Y. 498; Baldwin v. Liverpool & G. W. S. S., 74 N. Y. 125, 30 Am. Rep. 277; Spann v. Erie Boatman's Transportation Co., 11 Misc. Rep. 680, 33 N. Y. Supp. 566.

The judgment, however, was erroneous to the extent of $10.83. The amount paid by plaintiff was $390. The amount he was obligated to pay was $1.30 per ton for 208⅓ tons, amounting to $270.83. He was entitled to recover the difference between these amounts, $119.17, but has been permitted to recover $130.

Judgment modified by deducting therefrom $10.83, and, as so modified, affirmed, without costs in this court to either party. All concur.