ALLEN W. WALZ, Appellant, *v.* JOHN MUIR and Others, Copartners, Doing Business under the Firm Name and Style of JOHN MUIR & Co., Respondents.

First Department, December 3, 1926.

Brokers — stockbrokers — action to recover overcharge of interest — undisputed evidence shows that defendants agreed to carry plaintiff's purchase of Liberty bonds at four and three-fourths per cent for one hundred and eighty days and six per cent thereafter — plaintiff deposited collateral — defendants sought to charge twelve per cent — first overcharge was corrected but defendants refused to correct second overcharge — plaintiff changed account and defendants made overcharge in settlement — plaintiff was required to pay excess interest to get back collateral — defense of account stated — evidence does not show that plaintiff ever received statement of account — mere sending of statements showing twelve per cent interest charged could not change agreement.

This is an action to recover from stockbrokers an overcharge of interest. The plaintiff purchased Liberty bonds through the defendants under an agreement that the defendants would carry the purchase at four and three-fourths per cent for one hundred and eighty days and at six per cent thereafter. The plaintiff, in addition to the Liberty bonds purchased, also put up as collateral other Liberty bonds to the value of $10,000. The first statement rendered the plaintiff contained an overcharge of interest but that overcharge was corrected. A second overcharge was made which the defendants refused to correct and the plaintiff then transferred his account to another firm of brokers and was required to pay the twelve per cent charge in order to get back his collateral. The verdict of the jury in favor of the plaintiff was amply supported by the evidence and it was error for the court to set aside that verdict and direct a verdict in favor of the defendants.

The defense of an account stated was not sustained by the proof, for there is no evidence to show that the plaintiff ever received the account.

Furthermore, the mere fact that the defendants sent an account containing an overcharge of twelve per cent interest, even though said statement was retained by the plaintiff, would not obligate the plaintiff to pay the excess interest charged, for the agreement between the parties cannot be changed by a mere statement on the part of the defendants containing an overcharge of interest.

The payment by the plaintiff of the excess interest was not voluntarily made because it was necessary for him to pay the amount demanded by the defendants in order to procure the return of his collateral.

APPEAL by the plaintiff, Allen W. Walz, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 10th day of June, 1925, upon the verdict of a jury, rendered by direction of the court, and also from an order entered in said clerk's office on the 23d day of June, 1925, setting aside the verdict of the jury in favor of the plaintiff and directing a verdict in favor of the defendants, and denying plaintiff's motion for a new trial made upon the minutes.

*M. Lawrence Golieb* of counsel [*Joseph Cohn* with him on the brief; *Richard Condon,* attorney], for the appellant.

*Ralph Stout* of counsel [*Abberley & Bryde,* attorneys], for the respondents.

BURR, J. Plaintiff brings this action for money had and received to recover the sum of $2,450.27 from the defendants and alleges in his complaint that on or about May 14, 1919, defendants and plaintiff entered into a contract whereby it was mutually agreed that the defendants should purchase for the account of the plaintiff United States Victory four and three-fourths per cent notes of 1923, of the par value of $50,000 and would advance and loan to the plaintiff the purchase price of the same, on the same terms and at the same rates of interest as charged by the New York Trust Company, to wit, interest at the rate of four and three-quarters per cent per annum, for a period of ninety days, with the privilege in the plaintiff to renew the same for a further period of ninety days at the same rate, and interest thereafter to be at the rate of six per cent per annum, with no commissions, brokerage or other charges whatsoever; the plaintiff meanwhile, and until the loan was paid, pledging as collateral the bonds so purchased, together with other additional Liberty bonds of the aggregate par value of $10,000.

That thereafter, and on or about December 2, 1920, the said loan was collected by the defendants, and the sum of $54,935.93 received by them thereupon.

That after payment of said loan, together with all interest accruing to the defendants under the said contract, there remained in the hands of the defendants a balance of $2,450.27 belonging to this plaintiff, payment of which plaintiff has demanded of the defendants, but no part thereof has been paid.

That the thus reserving, taking and receiving from plaintiff the said sum of $2,450.27 in excess of the amount agreed as aforesaid, was in direct violation and breach of the contract between the plaintiff and defendants set forth above, and the plaintiff was

damaged thereby in the said sum of $2,450.27, payment of which the plaintiff has demanded of the defendants, but no part thereof has been paid.

That plaintiff has duly performed all the terms, conditions and promises of said contract on his part.

The defendants by their answer admit that on or about May 14, 1919, the defendants and the plaintiff entered into a contract whereby it was mutually agreed that the defendants should purchase for the account of the plaintiff United States Victory four and three-fourths per cent notes of 1923 of the par value of $50,000 and would advance and loan to the plaintiff the purchase price of the same and charge interest on said loan at the rate of four and three-fourths per cent per annum for a period of ninety days, with the privilege to the plaintiff to renew the same for a period of ninety days at the same rate, and that the plaintiff meanwhile, and until the loan was paid, pledged as collateral security the bonds so purchased, together with other additional Liberty bonds of the aggregate par value of $10,000. They deny the other allegations of the complaint and set up as a separate and distinct defense that on or about the 2d day of December, 1920, an account was stated between the parties wherein and whereby it was found that the plaintiff was indebted to defendants by reason of said loan in the sum of $54,935.93; that plaintiff paid said sum and received back the collateral pledged and thus settled and adjusted all matters in controversy between plaintiff and defendants.

The agreement claimed by plaintiff was clearly established by the evidence. No witness was called by defendants to contradict the testimony as to the making of the agreement, and likewise no witness was called to contradict the testimony that protests were made against the overcharge and against the failure of defendants to live up to the terms of the agreement prior to the transfer of the account in December, 1920.

The court charged the jury: " If you resolve the facts in favor of the plaintiff and shall find that the contract was made as claimed by him, then you may find a verdict in his favor for the sum of $2,422.72, that being the amount of interest the plaintiff claims was charged him in excess of the six per cent after the expiration of the one hundred and eighty days, in addition to $642 interest on that sum; or $3,064.72."

The jury passed on the evidence and found a verdict for the plaintiff for that amount. Thereupon the court set aside the verdict on defendants' motion over plaintiff's exception and directed a verdict for defendants and denied plaintiff's motion for a new

trial, to which the plaintiff duly excepted. The evidence as to the making of the agreement stands uncontradicted and was amply sufficient to justify a finding by the jury that the agreement as claimed by plaintiff was made.

Defendants to support their defense of an account stated introduced in evidence certain accounts purporting to show plaintiff's account at various intervals from 1919 to September, 1920. They do not contain all the items of the account and are not the same in items or balance as defendants' final statement of December, 1920, which shows the whole account. Defendants endeavored to show that these accounts were received by plaintiff. In view of the plaintiff's denial that he had ever seen any statements showing an overcharge of interest before he received the final statement of December 2, 1920, and the failure of defendants to offer any evidence of mailing or any other evidence to show that said statements were actually sent by defendants and received by plaintiff, it was a question for the jury to determine, and the court so charged.

The statements of account were produced in court from the files of plaintiff's former attorney, who died before the trial, and, although there was some evidence that plaintiff turned over certain papers to his attorney, there was no evidence that any of these accounts were among the papers so turned over. These statements of account were shown to plaintiff by defendants' counsel, and, after examining them, plaintiff testified he could not identify them as papers he had ever received. They were not produced as statements received by plaintiff, but merely as papers from the files of plaintiff's former attorney. The plaintiff's address as given in the subscription form appears to be C/o Herkins, 61 Broadway, which is the defendants' address. It is also in evidence that Herkins resigned from defendants' firm in October, 1919. Certainly the evidence permitted of conflicting inferences and the jury might properly find that these statements of account were not received by plaintiff. Their verdict for plaintiff indicated that they so found.

If the agreement was made between the parties for six per cent interest as claimed and proved by plaintiff, defendants could not change that rate of interest at will by sending statements to plaintiff containing excess interest charges. Nor would the receipt of such statements obligate plaintiff to protest said excess interest charges. No consideration for any interest charges in excess of the six per cent agreed upon was shown by defendants. The charge of twelve per cent interest was clearly an overcharge directly contrary to the terms of the agreement and, therefore, improper and illegal.

Where there is an express contract for the payment of interest,

the law will not imply from an account rendered another and wholly different agreement for the same purpose.

As was said by ALLEN, J., in *Young* v. *Hill* (67 N. Y. 162, 172) in considering the effect of a statement of account between the parties: " If it appears that any of the charges are not, in law or in equity, proper claims against the party debited with them, no promise to pay will be implied in respect to the balance into which they enter, and of which they are a part."

The defendants held plaintiff's securities as collateral and refused to correct their excess charges. Plaintiff in consequence of this refusal was compelled to pay these excess charges in order to get back his property.

In *Clancy* v. *Dutton* (129 App. Div. 23, 25) the Appellate Division, Second Department, said: " To constitute a voluntary payment the party paying must have had the freedom of exercising his will. When he acts under any species of compulsion, the payment is not voluntary; and if a party has in his possession property belonging to another and refuses to deliver such property to that other, unless the latter pays him a sum of money which he has no right to receive, and in order to obtain possession of his property the owner pays that sum, the money so paid is a payment made by compulsion and may be recovered back." (See, also, to same effect, *Kilpatrick* v. *Germania Life Ins. Co.*, 183 N. Y. 163, 169, and cases there cited.)

There was evidence before the jury to justify a finding that plaintiff did not assent to defendants' final account in December, 1920, but on the contrary disputed and protested against the items of interest entering into the balance stated therein as due, and only paid such balance under the stress and compulsion of the fact that in no other way could he obtain back the property withheld from him by defendants.

Whether the agreement was made as claimed by plaintiff, whether any accounts were sent to plaintiff by defendants and received and retained by plaintiff without objection prior to December, 1920, and whether plaintiff under all the facts disclosed by the evidence in this case had ever agreed or assented to any change from the six per cent fixed by the agreement to the twelve per cent charged by defendants in the final account of December, 1920, were all issues of fact submitted by the court for the consideration of the jury and were resolved by the jury in favor of the plaintiff after such consideration.

A party nonsuited or against whom a verdict is directed is entitled on review to the most favorable inference deducible from the evidence and all contested facts are to be treated as established in his favor. (*Higgins* v. *Eagleton*, 155 N. Y. 466.)

No exception was taken by defendants to the charge of the court. The evidence supported the verdict rendered in favor of plaintiff.

The order setting aside the verdict of the jury in favor of plaintiff and the judgment directed in favor of defendants should be reversed, with costs, and the verdict of the jury in favor of plaintiff for $3,063.72 should be reinstated and judgment entered thereon, with costs.

CLARKE, P. J., MERRELL, FINCH and MARTIN, JJ., concur.

Judgment and order reversed, the verdict reinstated and judgment directed to be entered thereon, with costs.