In the Matter of the Estate of JENNIE M. DUGAN, Deceased.

Surrogate's Court, Kings County, May 19, 1933.

*Rubenstein & Rosling,* for the petitioners.

*Reuben Cardin,* for the respondents.

WINGATE, S. Under ordinary circumstances, it would be difficult to conceive of a proceeding possessing less inherent interest or partaking more of the nature of ordinary routine than one brought under section 231-a of the Surrogate's Court Act for the determination of the fees of an attorney. Certain features of the application at bar, however, exalt it into the sphere of the legally interesting.

The present testatrix died in October, 1930. Her sole next of kin were a nephew, James F. Dugan, a grandnephew, Frank L.

Dugan, and three grandnieces, Margaret V., Anna A. and Mary E. Dugan, the four last-named individuals being a nephew and nieces of James. Being disappointed at the contents of the will, these five persons, after consultation, entered into an arrangement on October 21, 1930, by which James should act as the representative of all, in an attempt to obtain either the denial of probate of the will or a satisfactory settlement. It was agreed that James should pay one-half of any expenses incurred by reason of the contest or other action which might be taken and that the nephew and nieces should pay the other half. This entire arrangement, as has been determined by the Supreme Court, was one of trust and confidence and placed the conduct of the affairs of all parties solely within the direction and control of James as a fiduciary.

Shortly after this agreement, James retained the present petitioners as attorneys under a written contract which provided that they should receive " a sum equal to fifty (50%) per cent " of any recovery by way of settlement or otherwise.

About a year later, on October 20, 1931, James, without consulting with the other parties, signed a stipulation of settlement, and the objections to probate which had been filed were withdrawn and the will admitted to probate. In the following May, having learned of this transaction, the other parties attempted to call him to account, but he utterly repudiated the arrangement and claimed the settlement sum, amounting to $5,354.18, as his sole property, by way of gift.

After this repudiation, the nephew and nieces instituted an action in the Supreme Court for Queens county against him and the executors of this estate, the settlement fund still being in the hands of the latter, and obtained an adjudication which determined the facts as hereinbefore set forth.

In this action certain findings of fact and conclusions of law were made by Mr. Justice CROPSEY on April 7, 1933, those particularly pertinent to the present question being the following:

" 9. That the plaintiffs are entitled to one-half ($\frac{1}{2}$) of the said fund of $5,354.18, less one-half ($\frac{1}{2}$) of the reasonable value of the said attorney's services."

" 13. Plaintiffs have and are entitled to an equitable lien on the said fund of $5,354.18 to the extent of one-half ($\frac{1}{2}$) thereof less one-half the reasonable value of the attorneys' fees, for the rendition of legal services in representing the plaintiffs and the defendant, James F. Dugan in the estate of Jennie M. Dugan."

" 15. That the defendants, Title Guarantee & Trust Co. and Thomas J. Dillon as executors of the estate of Jennie M. Dugan are directed to pay to the plaintiffs herein from the said fund

of $5,354.18 in their possession, one-half ($\frac{1}{2}$) of the said amount amounting to $2,677.09 less one-half ($\frac{1}{2}$) of the reasonable value of the attorneys' fees for the rendition of legal services in representing the plaintiffs and the defendant, James F. Dugan in the estate of Jennie M. Dugan, and in addition thereto costs and disbursements of this action amounting to $          ."

On April 20, 1933, Mr. Justice Cropsey signed a decree which, among others, contained clauses fully effectuating the foregoing findings.

Application was made in that action by the plaintiffs for a determination of the amount of the fees due to the attorneys whom James had retained; but an adjudication of this question was expressly declined by the learned trial justice, apparently on the ground that the attorneys were not parties to the action.

These attorneys have now moved this court for an order determining that their compensation shall be fixed in the sum of $2,677.09, which, as will be noted, is exactly one-half of the total sum still in the hands of the executors, and held by them for the benefit of James F. Dugan and the plaintiffs in the Supreme Court action. In this application they have rested their claim and right to relief solely on the terms and percentage of the agreement, and have presented no statement or evidence upon which a determination is possible regarding the reasonable value of the services rendered.

Aside from section 278, which is here wholly inapplicable, the only authority expressly granted to the surrogate for the fixation of fees for an attorney is contained in section 231-a of the Surrogate's Court Act, which authorizes the court at any time " to hear an application for and to fix and determine the compensation of an attorney for services rendered  *  *  *  to  *  *  *  any person interested " in an estate.  The respondents in this proceeding contend very earnestly against the authority of and propriety of the exercise by the surrogate of the jurisdiction thus granted, on the facts of this particular case, maintaining that the applicants should be remitted to the Supreme Court for a determination of their rights. With this position the court cannot agree.  The action in the Supreme Court was directed solely to an adjudication of the rights of the uncle and his nephew and nieces in the particular fund.  The attorneys were neither necessary nor proper parties to that proceeding.  Although urged to do so, the learned justice who heard the case expressly declined to make any decision in respect to the attorneys' rights. Jurisdiction for the determination of this question is expressly granted to this court and its exercise here is particularly appropriate in view of the fact that all services performed related to the subject-matter of an estate in this court

with which this court is, of necessity, peculiarly familiar. No doubt concurrent jurisdiction for an adjudication of the rights of the attorneys resides in both courts, but the attorneys, as the possessors of those rights, have the privilege of electing between the two available forums, and nothing which took place in the Supreme Court was effective to circumscribe the right to make such election. They have chosen to submit the controversy to the jurisdiction of the surrogate and a refusal to determine it might well be deemed to exceed the bounds of judicial discretion. The objection to the jurisdiction of this court is, therefore, overruled.

It is essential, in approaching a decision on the merits, that a clear conception of the basis of the right of the petitioners in this proceeding be attained. Under ordinary circumstances, where an attorney acts under a written retainer, specifying a particular amount or rate of compensation, he possesses two remedies in respect to his compensation: *First,* a contract right under his retainer agreement; and *second,* a right under the attorney's lien which is given him by section 475 of the Judiciary Law. (*Matter of Abruzzo,* 139 Misc. 559, 562, 563; *Matter of Regan,* 167 N. Y. 338, 343; *Matter of Williams,* 186 id. 286, 291; *Matter of Fitzsimons,* 174 id. 15, 21.) Since it has been determined that an agreement for the payment of a specified compensation to an attorney is binding upon both the attorney and the client executing it, in the absence of a demonstration of fraud or other inequitable conduct in obtaining its execution (*Ward* v. *Orsini,* 243 N. Y. 123, 127; *Rodkinson* v. *Haecker,* 248 id. 480, 489), it will ordinarily follow that the two rights will be co-extensive. Where, however, as in the present case, the interests of other persons are involved in the avails of the litigation, this may and usually will not be the case.

The ordinary retainer agreement differs in no respect from the usual *inter vivos* contract and its interpretation and enforcement, as such, is not one of the functions of the surrogate except in an indirect way where it, in effect, amounts to an advance agreement by the parties respecting the extent of the lien of the attorney. To become entitled to this effect, however, the agreement must be binding upon all persons interested in the fund upon which the lien is sought to be impressed, either as a result of direct privity to the contract of retainer or on principles of agency or estoppel. So far as the nephew and nieces in the case at bar are concerned, they were not parties to the transactions with the attorneys and any element of estoppel is wholly absent. Under the determination of Mr. Justice CROPSEY, the agreement between James Dugan on the one hand, and his nephew and nieces on the other, was to the effect that the latter should pay and that their distributive shares of the

avails should be subject to a lien for one-half of the reasonable value of the services rendered by the attorneys employed by James Dugan. This was a clear limitation, as between them, on his authority to bind their interest in the subject-matter, to the effect that their shares were subject to be charged only to the extent of one-half of a *reasonable* fee. It is primary that " the principal has the unqualified right, as between himself and the agent, to define and limit the agent's authority; to invest him with large or with restricted powers " (*Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 5, 10), and that the principal will be bound by the agent's acts in excess of his authority only where he has invested the agent with an apparent authority which has misled an innocent third party. (*Walsh* v. *Hartford Fire Ins. Co.*, *supra; Harriss* v. *Tams*, 258 N. Y. 229, 235; *Brennan* v. *City of Albany*, 143 App. Div. 752, 754.) The liability in such case is, again, essentially based on estoppel, and is solely the result of the equitable doctrine " that when one of two innocent persons must suffer from the act of a third person, he shall sustain the loss who has enabled the third person to do the injury." (*Walsh* v. *Hartford Fire Ins. Co.*, *supra.*) In the present case the attorneys avowedly knew nothing of the existence or rights in the subject-matter of the nephew and nieces and can, therefore, obviously, have relied on no representations by them. Nor has it been demonstrated that the latter had any information as to the identity of the attorneys or the acts of their uncle in dealing with them. Under such circumstances, the nephew and nieces are clearly not bound by the contract. (*Martin* v. *Smith* 58 N. Y. 672; *Nixon* v. *Palmer*, 8 id. 398, 400; *Martin* v. *Farnsworth*, 49 id. 555, 558.)

It follows, therefore, that the petitioners herein must, as far as their rights against the nephew and nieces or the fund on which an equitable lien in their favor has been impressed, stand strictly on their lien rights under section 475 of the Judiciary Law, without the aid of the virtual stipulation of the value of their services contained in the retainer agreement. Their rights in this direction are merely to the extent of the fair and reasonable value of their services. (*Ward* v. *Craig*, 87 N. Y. 550, 559.)

The petitioners are, therefore, entitled to relief in this court to the extent of the fixation of the amount of their lien and a direction that it be paid to them from the avails in the hands of the executors, but this lien extends only to such amount as may be determined to be reasonable. On this question evidence must be presented respecting the services performed and the other considerations relevant to a decision as noted in *Matter of Sharp* (140 Misc. 427, at p. 433), since it is as impossible to hold as a matter of law in the absence of evidence of acts performed, that fifty per cent of the recovery

amounts to a reasonable compensation as it is to hold that as a matter of law it amounts to an unconscionable exaction. (*Ward* v. *Orsini,* 243 N. Y. 123, 127.)

If it should be decided that the sum properly payable on this score to the attorneys is less than the compensation contracted for by James Dugan, the attorneys would presumably possess a contract right against him for the difference, enforcible in an ordinary action in a court of general jurisdiction.

In view of the foregoing considerations it will be necessary for the petitioners to present evidence to the court upon which a decision in respect to the proper allowance which may be made for their services can be based, for which purpose the case may be set down for further hearing by either party on five days' notice to the others.

Proceed accordingly.