In the Matter of the Estate of HARRY WOOLFSON, Deceased.

Surrogate's Court, Kings County, April 8, 1936.

*Charles Goldenberg*, for the executrix, petitioner.

*William H. Walden*, respondent in person.

Wingate, S. The opposing contentions of the parties to this proceeding are so thoroughly illustrative of the apparently current misconceptions of a considerable proportion of the bar relative to the addition to section 231-a of the Surrogate's Court Act effected by chapter 332 of the Laws of 1934, that the occasion should be utilized in an attempt to clarify the theory, purpose and effect of this enactment.

The original section, which was passed in 1923 (Chap. 526), as is lucidly demonstrated in *Matter of Matheson* (265 N. Y. 81, 85), was, to a certain degree, declaratory of existing law and in part a further extension of the modern legislative tendency to vest in Surrogates' Courts complete jurisdiction to " determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having a claim or interest therein " (Surr. Ct. Act, § 40), to the end that complete settlement of the affairs of a decedent may be accomplished before this tribunal without the necessity for recourse to any other court.

Since repeal of statutes by implication is not to be adjudicated unless such effect is substantially unavoidable (*People* v. *Dwyer*, 215 N. Y. 46, 51; *Peterson* v. *Martino*, 210 id. 412, 418; *Matter of Bachmann*, 151 Misc. 761, 763), and such an interpretation is not necessary in this connection, it follows, as a result of the provisions of section 474 of the Judiciary Law, that except in the case of an infant, " the compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law."

It results that the power of the surrogate under section 231-a is confined to those instances in which either no express agreement whatsoever respecting compensation has been made by the parties, or the agreement attained was without the assent or privity of some person potentially interested in the fund from which the payment is to come.

Obviously a person who occupies the position of an estate fiduciary is still a person, and as such can enter into a valid contract binding upon himself for the payment of a specified sum in return for the rendering of the legal services necessary in completing the steps requisite for the devolution of the property of a decedent to those ultimately entitled thereto. If, however, he is not the person solely entitled to the property of the estate, he may not make a conclusively binding agreement that a fixed and specified sum for such services shall be paid from the assets of the estate, since to the extent of the interest of a person not a party to the agreement, he is attempting to dispose of the property of such other person without the latter's assent. The implied agency of an estate fiduciary does not extend that far, but merely authorizes him to bind the interest of the person for whom he is a fiduciary, to the extent of a sum which is reasonable in view of the attendant circumstances. (Surr. Ct. Act, § 222; *Matter of Meng*, 227 N. Y. 264, 269; *Matter of Hoffman*, 136 App. Div. 516, 519.) " The promisor as an individual might bind herself for more, but she could not go beyond that limit as to the assets in her keeping." (*Matter of Gilman*, 251 N. Y. 265, 271.)

It follows that the utility of section 231-a is confined to the fixation of the reasonable amount payable to an attorney in those cases where compensation has not been validly fixed by an agreement to which all interested persons were parties. The determination, when made, establishes the sum which may properly be paid from the assets of the estate on this account, and leaves wholly untouched any rights which any of the parties may have by virtue of a valid contract. (*Matter of Gilman*, 251 N. Y. 265, 271; *Matter of Matheson*, 265 id. 81, 85; *Matter of Dugan*, 147 Misc. 776, 780.)

It necessarily follows that if a fiduciary has made a valid agreement for the payment to an attorney of a specified sum for the transaction of the legal affairs of an estate in his charge, and it is determined in some appropriate proceeding that such sum is in excess of the amount which is properly payable, the reasonable value, only, will be paid from the estate or allowed as a credit in the accounting of the fiduciary, and the excess, if unpaid, must be independently recovered by the attorney from the fiduciary, as an individual, or will be surcharged against the latter on the accounting, if already satisfied from the assets of the estate.

The situations heretofore discussed concern only *valid* contracts between the fiduciary and the attorney. The essentials to a valid contract are too familiar to require extended repetition. Suffice it to note that any agreement secured through, or influenced by, duress, whether of person or goods (*Harmony* v. *Bingham*,

12 N. Y. 99, 116; *Van Dyke* v. *Wood*, 60 App. Div. 208, 215; *Kilpatrick* v. *Germania Life Insurance Co.*, 183 N. Y. 163, 168), or fraud (*Adams* v. *Gillig*, 199 N. Y. 314, 317; *Whipple* v. *Brown Bros. Co.*, 225 id. 237, 241), or misrepresentation (*Downey* v. *Mallinson*, 232 App. Div. 703, 704; *Matter of Clark*, 233 id. 487, 491; *Schweickert* v. *Schenectady Holding Co.*, 238 id. 220, 221), is potentially invalid. It is on such grounds, and these alone, that contracts for a specified compensation have been set aside *inter partes*. (*Ward* v. *Orsini*, 243 N. Y. 123; *Rodkinson* v. *Haecker*, 248 id. 480, 489.)

At this point, however, another factor intrudes itself into the consideration of the question, in the recognized principle that an attorney, in all relations with his client, occupies a fiduciary position (*Whitehead* v. *Kennedy*, 69 N. Y. 462, 466; *Matter of Donnelly*, 157 Misc. 319, 323, and authorities cited), by reason of which it is incumbent upon him to demonstrate that transactions between him and the client, at least subsequent to the making of the original contract of retainer (*Title Guarantee & Trust Co.*, v. *Stemberg*, 119 App. Div. 28, 30; *Clifford* v. *Braun*, 71 id. 432, 435; *Boyd* v. *Daily*, 85 id. 581, 586; affd., 176 N. Y. 613), are fair and reasonable.

The extent of the applicability of this doctrine in the present connection is so lucidly stated by Judge (now Chief Judge) CRANE in *Rodkinson* v. *Haecker* (248 N. Y. 480) that its repetition will materially aid in attaining an adequate conception of the legal principles here involved. He writes (at p. 489):

" As a general principle, a lawyer may make a contract with his client either for future or past services. Such a contract for compensation will be enforced unless it appears to have been procured by fraud, deceit, overreaching, undue influence, or through any other means which would move a court of equity to modify or set it aside. The circumstances may be many, which would prevent the enforcement of the agreement. No one can undertake to specify the instances. Sufficient to state that no undue advantage can be taken of the relationship or of the circumstances or of the client to procure such a contract. The courts are very sensitive of the honor of the bar. Transactions between a lawyer and his client must be fair. Unless unreasonable upon its face, the contract, however, like any other contract is presumed to be fair until the contrary appears. It is a matter of proof. Seldom, if ever, can a contract be sued upon without the circumstances of the transaction appearing. A lawyer and his client may have an account stated between them the same as other persons.

" It is always open, however, for the client to plead or to show that for some equitable reason it should not be enforced. Equity

is a patient listener to all such charges, examines them carefully and thoroughly. When groundless, however, the contract or the account stands."

Except for procedural considerations, the foregoing summarizes the entire subject, with the following results:

1. A valid agreement between parties for the compensation of an attorney is enforcible between them.

2. An estate fiduciary has no authority to bind an estate in which others are interested, for the payment of a specified compensation to an attorney, in the absence of assent by such others.

3. A contract for a fixed compensation, unless unreasonable on its face, is presumed to be fair as between the parties thereto.

4. A contract for a fixed compensation may be avoided, as between the parties, only on allegation and proof of inequitable conduct in its procurement.

In view of the second stated principle, it would appear inevitable that where an agreement for a fixed compensation has been made and satisfied from estate funds, and is later questioned by some one not a party thereto, and the amount paid is found to be more than the reasonable sum which the attorney had a right to receive as against the objecting party, that restitution thereof by him to the estate could be compelled on the ordinary principle that one who has improperly received trust funds with notice of their character can be compelled to restore them. (*National City Bank* v. *Waggoner*, 230 App. Div. 88, 92; affd., 255 N. Y. 527; *Robinson* v. *Adams*, 81 App. Div. 20, 25; affd., 179 N. Y. 558; *Matter of Morrell*, 154 Misc. 356, 357, and authorities cited.)

It was this principle which was validated in *Matter of Anderson* (136 Misc. 110) and was approved and applied by the appellate courts in that case (232 App. Div. 704; 257 N. Y. 592; see *Matter of Duggan*, 146 Misc. 596, 597, 598). There the attorney had exacted an unreasonable fee from his client by means of the retention of assets in his hands, thus demonstrating duress of goods, within the recognized authorities on the subject. (*Harmony* v. *Bingham*, 12 N. Y. 99, 116; *Briggs* v. *Boyd*, 56 id. 289, 293; *Clancy* v. *Dutton*, 129 App. Div. 23, 25; *Boss* v. *Hutchinson*, 182 id. 88; *Consolidated Fruit Jar Co.* v. *Wisner*, 110 id. 99, 102; affd., 188 N. Y. 624; *Reed* v. *Hayward*, 82 App. Div. 416, 418; *Matter of Welton*, 141 Misc. 674, 690.)

Since the assets in question were the property of a decedent's estate and adjudication of the controversy was necessary for a " complete disposition " thereof, it was obviously within the jurisdictional authority of the surrogate by reason of the statutory grant contained in section 40 of the Surrogate's Court Act.

The controversy was brought on for hearing by the usual initiating process in use in Surrogates' Courts and a result was attained after due answer and hearing in the mode here adopted in the trial of any other issue. The proceeding was, therefore, not in any sense summary as that term is properly employed. (*Matter of Rosenberg*, 157 Misc. 490, 494 *et seq.*) The misunderstanding which appears to have arisen in some directions in this connection may have had as a contributing cause certain language used by this court arguendo in the original *Anderson* opinion (136 Misc. 110), it being pointed out that summary authority for such relief had been theretofore generally exercised, the thought attempted to be conveyed being that if such relief might be granted in a summary manner, its award in a regular litigation after due process and trial, was obviously proper as on *a fortiori* matter.

Such proceedings in this court are not in any sense summary but amount in essence to a suit in equity to set aside a contract on the ground that the reality of the assent of the parties thereto was defective by reason of fraud, duress or other invalidating cause, and for an adjudication of the respective rights of the litigants following a determination of such invalidity. Since such agreements concern the estates of decedents, they are within the letter and spirit of the statutory grant of jurisdiction to Surrogates' Courts.

The next event of interest in this connection was the determination of the Court of Appeals in *Matter of Rosenberg* (263 N. Y. 357). In that case the estate fiduciary had been induced by improper representations of her attorney to make payment to him of sums which were excessive by the amount of $2,750. She duly instituted a proceeding in this court against the attorney in which she properly pleaded the invalidity of the contract, sought to avoid it by reason of the improper actions which induced it and to have restitution made in the event that her primary contention was sustained. Answer traversing the improper action was interposed and the issues tried. They resulted in an affirmative finding of improper conduct by the attorney sufficient to void the agreement. The matter being thus again at large, with no valid subsisting agreement respecting compensation, the court proceeded to fix the reasonable sum due the attorney for the services rendered and directed restitution by him of the portion of the trust fund which he had received, with knowledge of its character, by reason of his equitably fraudulent acts. This result was affirmed by the Appellate Division (240 App. Div. 730), with one justice dissenting. It was reversed in the Court of Appeals (263 N. Y. 357), Judge (now Chief Judge) Crane filing a vigorous dissenting opinion.

The majority did not deny that the situation was such as to afford a remedy to the equitably defrauded party, their apparent opinion being that this was to be pursued only by action in a court of general jurisdiction. Otherwise stated, this amounted merely to an authoritative affirmation that whereas the basic principle was recognized that a contract procured by improper means was voidable at the suit of the injured party, nevertheless, Surrogates' Courts were powerless to apply the remedy in spite of the fact that the contract pertained to the affairs of a decedent's estate and had resulted in a diversion of the assets of such estate to one who received them with full knowledge of their character. It was, therefore, in essence, no more than an effort to circumscribe by interpretation the broad legislative grant of jurisdiction to Surrogate's Courts contained in section 40 of the Surrogate's Court Act.

This restriction received prompt and decisive legislative reversal at the hands of the Legislature sitting at the time the decision was rendered, in the form of the addition to section 231-a of express authority to adjudicate such a controversy.

When the enactment thus made is viewed in its historical connection, therefore, it is entirely obvious that no innovation was made in the law. Existing principles respecting sanctity of contracts contained in the general body of the law and particularly in section 474 of the Judiciary Law, remain wholly unaffected. A *valid* contract is just as valid today as it ever was. If, however, it is charged that an attorney has obtained a contract or procured a settlement of his claim for services, by improper means, and this contract had to do with the affairs of a decedent's estate, the surrogate, by virtue of this express addition to section 231-a of the Surrogate's Court Act, possesses authority to inquire into the issues of fraud, undue influence or other improper dealing, and, if an affirmative determination is attained, to afford appropriate relief.

The addition to the section was not designed and should not be construed in a manner to harass an attorney who has dealt openly and fairly with his client. To repeat the words of Chief Judge CRANE: " Unless unreasonable upon its face, the contract " between an attorney dealing with estate affairs and his client " like any other contract is presumed to be fair until the contrary appears."

In view of this basic principle, the pleadings in any proceeding which seeks to avoid the contract must lay the necessary groundwork for a demonstration of the invalidating circumstances upon which the applicant relies, in default of which they will be vulnerable to an attack for insufficiency.

In the case at bar the petitioner recites the probate of a will in 1931 which appointed her the executrix and made her sole legatee; the retainer of the respondent as attorney for the settlement thereof; his performance of certain specified services; and the payment to to him of three sums aggregating $1,100, the last of which was made over three years and nine months ago and " that your petitioner is of the opinion and verily believes that the said sum of $1,100.00 paid to said * * * attorney for services rendered in connection with this estate is excessive."

The respondent now moves for judgment on the pleadings on the ground that the petition is patently insufficient on its face, in which position the court is in wholehearted agreement with him.

The opinion of the petitioner respecting the size of the fee paid the respondent nearly four years ago is not even mildly interesting.

The agreement obviously attained by mutual agreement between the parties and satisfied, was presumptively proper and valid. There is no inference of constructive fraud by reason of a payment of $1,100 in return for the services recited. This would depend in large measure upon the size of the estate and the details of the labor involved (*Matter of Spanier*, 148 Misc. 879, 883; affd., 241 App. Div. 615; *Matter of Sharp*, 140 Misc. 427, 433; *Matter of Mackenzie*, 155 id. 822, 825), the pertinent facts in respect to which are not disclosed.

Finally, it must be borne in mind that the basis of the relief sought is equitable, for the avoidance of an apparently valid contract in which the present litigants alone are interested, on grounds of actual or constructive fraud. In such a situation, equitable defenses are available and where apparently existing on the allegations of the petition, must be negatived. By reason of the delay of almost four years in seeking the avoidance of her agreement, the petitioner is *prima facie* chargeable with laches, yet no single exculpatory reference thereto is made in her petition.

It follows that the motion for judgment on the pleadings must be granted and the petition dismissed, with costs.

Enter decree on notice.