## In the Matter of the Estate of BENJAMIN LESSIG, Deceased.

Surrogate's Court, Kings County, December 21, 1937.

*Samuel H. Henis,* for the petitioner Mamie Lessig, as administratrix, accountant.

*Philip D. Greiff,* for Mamie Lessig, administratrix-widow, objectant to the account.

*William Man Parkhurst,* special guardian for Barbara and Marvin Lessig, infant children of decedent.

WINGATE, S. Three major questions are presented for determination in this case. The first is the propriety of acceptance of the compromise offer of $35,000 in settlement of the cause of action for the death of decedent. In view of the history of the litigation the court deems acceptance to be an act of wisdom, and the compromise will be approved.

The second, relating to the payment to be made to the attorney for the administratrix, presents a dual aspect. At his solicitation, the administratrix, acting in her individual capacity, and prior to the grant of letters to her, signed a retainer agreement which specified that his compensation should be thirty-three and one-third per cent of any recovery. The retainer makes no express mention of the subject of disbursements, although it does state that the one-third to be paid to the attorney is to be " as and for your fee." The testimony adduced on the hearing is in sharp conflict as to whether or not it was understood that this one-third should also cover disbursements. Such an agreement, if actually made, would have been champertous under section 274 of the Penal Law. (*Matter of Gilman,* 251 N. Y. 265, 269.) As a pure question of credibility of witnesses, the court is unconvinced that any such agreement was made. It follows that all proper disbursements are payable to the attorney in addition to the fee to which he is entitled.

The actual and prospective disbursements as itemized by him total $1,945.38. Of this sum $600 is listed as still payable to an " investigator," who served subpœnas upon the witnesses and assisted in the factual preparation of the case. In the opinion of the court this service was as much a necessary part of the duties which the attorney agreed to perform as was the typewriting of pleadings. It is the consistent policy of this court to deny a separate compensation to an attorney in respect of matters or

services which are a necessary part or adjunct of a properly equipped lawyer's office. In its opinion this alleged obligation is so classifiable.

Whereas, however, separate remuneration to the " investigator " as such is not permissible, it does appear that in the course of the many trials of the case he served forty-five subpœnas, and he may be allowed for this service at the rate of one dollar and fifty cents each, giving a total of sixty-seven dollars and fifty cents, thus reducing his prospective compensation by the sum of $532.50.

The court is not disposed to view too critically the other disbursements which the attorney swears he actually made. They all appear to have been expended in the interest of the advantageous outcome of the litigation which he successfully conducted. Their propriety as against his clients is not to be judged by the standard of whether or not they might be taxable as costs against an unsuccessful opponent. No one questions the fact that they were actually made or their utility in contributing to the mutually desired result. Perhaps the same result might have been obtained had some of them been omitted. Perhaps the reverse might have been the case. No one can determine this question. In any event, a policy of ultra-niggardliness in this regard will be apt to be detrimental to clients and would be a dangerous precedent to establish, particularly when it is recalled that the attorney is in effect paying one-third thereof out of his own pocket, with the result, in a case like the present, that he is paying a greater proportion thereof than any other interested party. It follows that the attorney will be allowed his disbursements as stated, with the single deduction noted. The net sum due him in this regard is $1,412.88.

The next question concerns the fee to be paid the attorney. As noted, his agreement was for one-third of the net recovery. He asserts, however, that by reason of the quite unusual amount of labor entailed, his percentage should be increased to forty-five per cent. In support of this position he urges that if he had exacted an excessive fee this court would have reduced it pursuant to the authority in this regard accorded by the last paragraph of section 231-a of the Surrogate's Court Act. He argues that, in view of the demonstrated services, the actual agreement is, in effect, unconscionable to his disadvantage. The fallacy in this position lies in the fact that the court possesses no authority such as is asserted to exist unless an element of fraud, either actual or constructive, entered into the making of the original contract. (*Ward* v. *Orsini,* 243 N. Y. 123; *Rodkinson* v. *Haecker,* 248 id. 480, 489; *Matter of Woolfson,* 158 Misc. 928, 931.) There is here no assertion that the attorney was put upon by the widow. The arrangement made

was his own suggestion. Conceivably he underestimated the labor involved and made a bad bargain, but this was not the fault of the widow, and amounted to a stipulation of value on the part of the attorney (*Matter of Dugan*, 147 Misc. 776, 781; *Matter of Post*, 155 id. 389, 390) which, under the circumstances disclosed, must be deemed binding upon him.

The final question for decision relates to the authority of this court to award the sum of $2,100 out of the moneys to be received on the compromise to the board of child welfare of the city of New York.

It has been demonstrated that the widow received this sum for the support of herself and her infant children. It is also intimated, but has not been demonstrated, that she made an express agreement to repay it. The terms of any such agreement are of vital importance. Possibly, if an agreement was made and is in existence, its terms would effect an equitable assignment of some part of the present rights of the widow in this recovery. This is impossible of determination as the agreement, if any, is not before the court. Enforcement of an agreement which did not effect an equitable assignment would not be within the jurisdiction of this court. (*Ward* v. *N. Y. Life Insurance Co.*, 225 N. Y. 314, 319, 320; *Matter of Miller*, 257 id. 349, 356, 357; *Matter of Thomas*, 235 App. Div. 450, 454; *Matter of Sichel*, 162 Misc. 2, 4.)

A further difficulty in encountered in this connection in the final paragraph of section 128 of the Public Welfare Law, which, under the facts here disclosed, would seem to prevent a recovery of any sums paid for the relief of the infants. If this be the effect of the enactment, it would follow that, since a part of the sum paid to the widow was on their behalf, a demonstration was necessary as to the parts of the total claim which were attributable to the widow and the infants respectively. No such showing has been adduced.

It follows that the court must decline because of failure of adequate proof to adjudicate this claim.

Enter decree on notice in conformity herewith.