In the Matter of the Estate of MEYER CHINSKY, Deceased.

Surrogate's Court, Kings County, December 19, 1939.

*Aaron William Levy,* for Adolph Feldblum, as administrator, etc., petitioner.

*Samuel Saline* [*Francis M. Verrilli* of counsel], for Albert S. Osborn, claimant.

*Joseph A. Kennedy,* special guardian for Simeon Lazarowitz, an incompetent distributee.

*Marshall, Bratter & Seligson,* for Martha Howard, objectant.

*Anna Solomon,* for Bernard Indelman, objectant.

*Blum & Jolles,* for the Polish Consul, objectant.

*Joseph I. Erenstoft* and *Herbert L. Wasserman, pro se,* objectants.

WINGATE, S. Most professional men have experienced the human phenomenon that in the estimation of their clients the value of their services decreases at least in direct, and frequently in geometric, ratio to the length of time elapsing between the performance of the service and the date when remuneration therefor is sought. A patient who is *in extremis* is ready to give his all to a physician who can save his life; a client on the verge of financial extinction is ready to agree that the lawyer who can save him from this fate is deserving of anything from a third to one-half or more of the money which he can save from the wreck.

In the present case a cleverly fabricated will was presented for probate.* So well had the conspiracy for its promulgation been devised that even in retrospect it seems little short of a miracle that this result was averted. Although the recollection of the patient (in this instance the contestant) respecting the circumstances surrounding the operation appear to have become dulled by the passage of five and a half years since the event, they are vivid in the recollection of the court. The keystone of the arch of demonstration and frustration of the plot to divert to others than those entitled thereto in intestacy, the assets of the deceased, was the irrefutable demonstration of Mr. Albert S. Osborn. Whatever any one may say (when opposing his claim for remuneration) respecting the cogency of the showing by others, the court, which tried the case both on the law and the facts, can assure them that had it not been for Mr. Osborn's wholly convincing demonstration, there is every probability that a diverse result would have been reached.

What is the value of this service which created for the distributees a sizeable estate where otherwise they would have received nothing? Who can say? The court is familiar with no criterion by which to evaluate the question. The two experts on questioned documents who testified on the hearing and who, next to Mr. Osborn

* 151 Misc. 129.

himself, are perhaps the most widely known experts in this field, both testified that his services were worth $5,000. No opposing testimony was introduced. The subject of the remuneration of an expert of this variety is not, like that respecting compensation for attorneys' services, one in which any surrogate attains perhaps unparalleled expertness by reason of daily contact. The court possesses no judicial knowledge upon which to predicate a diverse finding. It can state with positiveness that were it, as an individual, to be placed in the position of the present distributees by reason of like services, it would deem the charge reasonable. Perhaps they will now receive $56,000. It is conceivable that they may benefit up to almost three times this amount. The opponents of the requested remuneration of Mr. Osborn virtually concede the lesser sum. The court can assure them that but for his services their chances of receiving a single cent would have been very remote indeed.

No one has challenged the authority of the court to fix his remuneration. No rights of creditors are involved. Perhaps it would have been preferable procedure for the successful attorney for the contestants to have paid the sum, set it up as a disbursement against his clients, and asserted a charging lien on their interests for the amount. It would unquestionably have been validated by the court had this procedure been adopted. (*Matter of Lessig*, 165 Misc. 706, 708.) It would seem, at least in the absence of objection, that Mr. Osborn could and should be subrogated to the right which the attorney would have possessed against the interests of the distributees. He has waited for five and a half years for his payment. He has selected his tribunal. In this connection the oft-repeated words of the late Chief Judge CARDOZO in *Matter of Raymond* v. *Davis* (248 N. Y. 67, 72) assume a peculiarly apt significance: " To remit the claimant to another forum after all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked."

The claim of Mr. Osborn will be allowed in the sum of $5,000 Since he has been paid $1,250, the balance of $3,750 is due him.

Proceed in conformity herewith.