opinion of the court
Charles J. D’Arrigo, J.
The attorney for the executrix commenced this proceeding under SCPA 2110 to compel the former attorneys for the executrix to deliver to her a check in their possession. This check, payable to the executrix in the amount of $158,025.23, represents a partial award in a tax certiorari proceeding. In that proceeding the executrix was represented by the law firms of Ginzburg, Gaines, Gaines, DeBoissiere & Newman, and Cawse & Perry. Pursuant to a retainer agreement executed on June 9,1977 the attorneys were to receive 25% of any reduction in the tax assessment. The executrix wishes this award to be applied to the payment of real estate taxes currently in arrears and other estate obligations in an effort to prevent the foreclosure of any estate assets. She contends that because of the cash *782 poor status of this estate, the Surrogate should fix her former attorneys’ fee and defer payment of that fee until the final accounting. Her former attorneys claim a possessory retaining lien and a charging lien on the proceeds. They urge the Surrogate to order that their agreed upon fee for services performed in the tax certiorari proceeding be paid before they turn over to the executrix any proceeds from that award. They also urge the Surrogate to order to be paid the remainder of legal fees due them for estate work not related to the tax certiorari proceeding, which have not been paid as of this date.
Stated briefly, the issue before this court is whether the former attorneys for the executrix have an enforceable lien on the proceeds in their possession or whether the court should order the proceeds turned over to the executrix to be applied to estate obligations and possibly prevent the loss of any estate assets.
An attorney who performs services for a client deserves to be compensated for his efforts. Obviously a change of attorneys does not in itself discharge the client from the obligation to pay the attorney for past services. (Robinson v Rogers, 237 NY 467, 470.) The law provides the attorney with a method to secure payment.
In Matter of Heinsheimer (214 NY 361, 364) Judge Cardozo said: “At common law, the liens available to an attorney were of two kinds. There was a retaining lien on all papers, securities or moneys belonging to his client which came into his possession in the course of his professional employment. (Bowling Green Savings Bank v. Todd, 52 N. Y. 489; Ward v. Craig, 87 N. Y. 550, 560; Goodrich v. McDonald, 112 N. Y. 157, 163.) This was a general lien for the entire balance of account. It was dependent, however, upon possession. There was also a charging lien, which bound a judgment recovered through the attorney’s efforts. This lien was not dependent on possession. The very reason for its existence was to save the attorney’s rights where he had been unable to get possession. Tt was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.’ * * * If the *783 attorney got possession of the fund, he had a general lien. If he did not get possession, his lien was for the services that brought the fund into existence. This charging lien still exists under our statutes. It has been enlarged to the extent that it now attaches to a cause of action even before judgment. ‘From the commencement of an action or special proceeding’ the attorney now has a lien ‘upon his client’s cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client’s favor, and the proceeds thereof in whosoever hands they may come.’ (Judiciary Law, Cons. Laws, ch. 30, sec. 475.) Except as thus changed, the charging lien is to-day what it was at common law.”
If the attorney then obtains possession of any proceeds received through his efforts he has a general possessory lien, of course, but if he does not, he is limited to a charging lien, in appropriate cases, upon the proceeds for the services rendered which created them.
An understanding of the nature of a tax certiorari proceeding is of some benefit in the instant proceeding. Taxes are a charge upon real property and the amount of the tax debt is determined by multiplying the assessed value by the tax rate. If the taxpayer believes the tax debt produced by that formula is excessive because his assessment is unequal or illegal, he may challenge its validity in certiorari proceedings and the order of the court, whether entered after trial or by way of settlement, constitutes an adjudication with respect to the validity and amount of the assessment. The litigation is defensive and unless a refund of past taxes paid is obtained the proceeding does not create any proceeds. (Goldstein v 4000 East Riv. Rd. Assoc., 64 AD2d 484.)
This estate has been greatly enriched through the successful efforts of the former attorneys for the executrix in the tax certiorari proceeding. A portion of that tax refund is now in the possession of the attorneys thereby giving them a retaining lien on the proceeds. The retaining lien is dependent upon possession and once the property is surrendered the lien would be lost. (Robinson v Rogers, supra.)
For this court, acting under the authority of SCPA 2110, to now order those proceeds turned over to the executrix to *784 be used by her to pay estate obligations would be inequitable and an improper exercise of the court’s power. Judge Danforth in Matter of Knapp (85 NY 284, 299) succinctly stated “the court cannot act arbitrarily and so tie the attorney’s hands that the client may carry off the fruits of his labor”. Where the attorney has the money in his possession, he has a lien upon it for services in procuring it, and the Surrogate may fix the value of his services. (Matter of O’Connor, 177 App Div 616.)
The attorney for the executrix contends that should the court determine the former attorneys for the executrix do indeed have a lien in the proceeds, their lien would be subject and subordinate to any prior liens. He refers the court to Matter of Carver Houses (114 NYS2d 707) as supporting that proposition. A careful reading of that case, however, distinguishes it from the case at bar.
Carver Houses (supra) deals with a condemnation proceeding. The attorney’s lien in the condemnation award is indeed subject and subordinate to prior liens according to Carver Houses. The instant proceeding, though, deals with a tax certiorari award relating to services performed on behalf of the executrix of an estate. EPTL 11-1.1 (subd [b], par [22]) provides that reasonable attorneys’ fees in an estate matter, are considered administration expenses. SCPA 1811 (subd 1) provides that expenses of administration shall be preferred to. all debts and claims against an estate.
A tax, too, is a preferred debt. However, Surrogate Bennett in Matter of Reynolds (38 Misc 2d 278), considering tax debts held that debts due for unpaid taxes are preferred to all claims and debts after the payment of administration expenses. Accordingly, although the unpaid taxes in this estate give rise to a preferred debt, the law gives a higher priority to the payment of these attorneys’ fees as part of administration expenses.
The attorney for the executrix argues that unless these funds are applied towards the payment of taxes and other estate obligations there is a great risk of loss of estate assets by way of foreclosure. This argument, however, is not persuasive. EPTL 11-1.1 enumerates the powers of a fiduciary, including, inter alia, the power of sale and mort *785 gage. This estate has been active in this court for over six years, during which time it has been involved in much litigation and many legal maneuvers. It appears that the estate is now in a position where it is “land rich but cash poor”.
The fact that this estate may now have insufficient cash to pay its obligations, should not prevent the attorneys who have enriched this estate through their efforts from enjoying the fruits of their labors. It was the decision of the executrix to not pay taxes at a time when there were funds available to meet those obligations. Furthermore, the executrix has chosen not to avail herself of those methods provided for by the statute to raise the funds required to pay the obligations of the estate. Instead, she looks to the Surrogate to order the estate debts now be paid from those funds in the hands of her former attorneys. This court declines to enter such an order.
Furthermore, the attorney for the executrix refers the court to Leviten v Sandbank (291 NY 352) as supporting his position that the court may compel an attorney to deliver to his former client the very item upon which he has a retaining lien. In that case, however, the attorney had in his possession other adequate security. No other security exists in the instant proceeding. The attorneys have only the check in their possession securing the payment of their fees. To compel them to release their lien without additional security would impose undue hardship upon the attorneys. Certainly, the attorneys deserve to be compensated for the work which they performed on behalf of the estate.
Still to be determined is the amount of compensation to which the former attorneys for the executrix are entitled. It is well settled that the court has the power and obligation to limit the compensation of attorneys to reasonable amounts regardless of any agreement made by the fiduciary. (Matter of Meng, 227 NY 264; Matter of Cook, 41 AD2d 907, affd 33 NY2d 919; Matter of Lerner, 52 Misc 2d 967.) There remains, too, a question concerning the degree of ownership of the various properties which would affect the percentage of the tax certiorari award payable to the *786 estate and the percentage of the taxes to be paid by the estate.
A hearing will thus be required to determine the amount of compensation due to the attorneys for their lien on the tax certiorari award and their other efforts on behalf of the estate before they were relieved by the executrix. All attorneys are directed to be present in the Surrogate’s courtroom at 10:00 a.m. on June 13, 1983 to proceed with this hearing.