OPINION OF THE COURT
Louis D. Laurino, S.
In this SCPA 2110 proceeding petitioner, the discharged law *58 firm, seeks a judicial determination of its fees for services rendered to the executors in connection with the decedent’s estate.
A hearing was held and respondents took the position that the fees sought in connection with Kostein Realty Corporation were improper charges to the estate in that these legal services were rendered to them as individuals unrelated to their fiduciary capacity. The court disagrees; but for the death of the decedent and the estate assets the services rendered towards the formation of Kostein Realty Corporation may not have been necessary. According to the testimony the senior partner of petitioner law firm and respondents agree that the decedent wanted her children to benefit from her assets and that her two sons should be in control in order to prevent any overreaching by her son-in-law. In order to preserve control over the family business the senior partner suggested the formation of a partnership which decedent’s sons rejected. Instead, respondents opted for the formation of a subchapter S corporation which was created after their mother’s death to fulfill her basic testamentary plan of protecting the estate assets. Petitioner prepared the buy-sell agreement which restricted the transfers of stock and kept the interest within the family members. Petitioner, through its employees, provided all the necessary preparation towards the formation of the subchapter S corporation.
In addition, the court is mindful of the fact that since the executors/respondents are also the residuary legatees of this estate a denial of fees based on the aforementioned objection would be fruitless, merely causing additional litigation for the same parties. Moreover, since assets of the decedent’s estate are affected, the Surrogate’s Court has jurisdiction to determine the reasonable value of legal services rendered in connection with the formation of the subchapter S corporation (Matter of Piccione, 108 Misc 2d 255).
A second objection raised by respondents is that services provided by petitioner through various employees were duplicative.
This court has experienced two attorneys from the same law firm appearing on the same calendar matter where one answers the calendar call while the other merely stands beside him holding the attaché case. Undoubtedly, these facts constitute a duplication of services for which the court would not allow compensation for the time and services of both attor *59 neys. However, it is not unusual for an associate to work with a senior partner where their joint work does not necessarily constitute a duplication of services.
In accordance with the testimony, time sheets and bills submitted, the court finds that although similar services were provided by petitioner’s employees the only duplication that existed was the unavoidable built-in duplication often found within a law firm which will be taken into consideration by the court in its determination, such as where a senior partner pursuant to a conversation he had with a client instructs the associate on the next step to be taken on behalf of that client.
Before the court is also the question whether the hourly charges for services performed by paralegals employed by petitioner will be considered in the court’s over-all determination of legal fees in a 2110 proceeding where these charges are an integral part of the agreement for compensation.
SCPA 2110 confers upon the Surrogate’s Court the power to fix and determine the compensation properly payable to the attorney in connection with services rendered in connection with the decedent’s estates at any time during the administration of the estate. The statute provides the remedial mechanism for the discharged attorney.
The services referred to under SCPA 2110 must be legal services provided by an attorney unless special circumstances necessitate the performance of services outside the State (Matter of Nunno, 161 Misc 707; see, Matter of Stern, 62 Misc 2d 730).
The cost of paralegals as a general rule is an administrative expense of the law firm that falls within office overhead and therefore is not reimbursable (Matter of Lessig, 165 Misc 706). However, the agreement between petitioner and respondent for petitioner’s compensation explicitly provided for the paralegals’ services as an essential part; here, the clients themselves contracted to pay to petitioner for services rendered by paralegals.
Pursuant to the testimony given, petitioner through its senior partner entered into an oral retainer with Ruth Gold-stein when her husband, David, died providing for $160 hourly fee for the work of the senior partner; $80 hourly fee for the associate’s work; $50 hourly fee for the law clerk’s and paralegal’s work. After Ruth Goldstein died on January 3, 1985 the senior partner and associate of petitioner’s law firm met with respondents and discussed petitioner’s fees. The senior partner *60 of petitioner’s law firm testified that at this meeting he told respondents that their mother was billed at the old rates of which they were aware and that petitioner would complete the work for their father’s estate at the old rates. However, any work done on behalf of their mother’s estate would be billed at the new rates: $200/hour for the senior partner’s time and $100/hour for the associate’s time; $60/hour for the paralegal. Respondent, Daniel Goldstein, testified that all three of the coexecutors/respondents herein had full and complete knowledge of the terms of the retainer agreed upon by petitioner and their mother. Moreover, Mr. Goldstein further testified that time sheets and daily work sheets in addition to the statement of services were attached to petitioner’s bill dated December 31, 1984, which charged at the old rates for services rendered when their mother was still alive included charges for the services performed by the paralegals and that this bill was paid by respondents without any objection. Petitioner was consistent in its billing practices; time sheets, daily work sheets and statements of services were always attached to the bills and the bills always included charges for paralegals, all of which respondents had complete knowledge.
Transactions between an attorney and his client are closely scrutinized by the courts due to the confidential relationship between an attorney and client (Matter of Holland, 110 App Div 799). Any ambiguity found within a retainer would be resolved against the attorney (Luxembourg v Hotel & Rest. Employees & Bartenders Intl. Union Pension Fund, 91 Misc 2d 930). The terms of the instant retainer were not only unambiguous but crystal clear and not susceptible to a misunderstanding. Unless unconscionable or illegal on its face, a retainer is like any other contract and, therefore, is presumed to be fair until the contrary appears. (Prial v Supreme Ct. Uniformed Officers Assn., 91 Misc 2d 115.) The testimony and papers submitted establish without any doubt that the terms of the retainer, including the charges for services provided by the various paralegals employed by petitioner was an essential part which was understood by the respondents. Notwithstanding the discharge of petitioner the retainer serves as a guide to the court in its determination. Accordingly, the charges for paralegals which total $788 shall be considered in the court’s over-all determination of legal fees.
Respondents also contend that the fees charged were excessive. The court notes that although the hourly rate for the *61 senior partner was greater than the rate for the associate, respondents had equal access to both. Kenneth Goldstein called the senior partner while his sister preferred speaking to the associate and the estate was charged accordingly. The court is also mindful of the fact that on the 706 Federal estate tax form item No. 2, schedule J, the sum of $11,347.85 appears with the name of petitioner and its address with the following words "amount estimated/agreed upon/paid” which requires a striking out of the words that do not apply and the words were untouched.
Respondents were entitled to change attorneys at any time they wished and for any reason. Upon discharge the retainer is wholly abrogated (Matter of Pagnotta, 161 Misc 415) and petitioner is entitled to the reasonable value of its services based on quantum meruit (Matter of Dinger, 118 Misc 2d 781; Matter of Pagnotta, supra).
Upon consideration of the essential criteria for a determination of the reasonable value of services, the difficulty of the questions, the amount of time and labor involved, the reputation and expertise of the attorneys rendering the services and the customary fee charged by the Bar for similar services and the amount involved (Matter of Potts, 213 App Div 59; Matter of Freeman, 34 NY2d 1; Matter of Brehm, 37 AD2d 95), the fair and reasonable value of attorney’s fees are fixed in the amount requested.
Disbursements are allowed in the sum requested. Again, reimbursement for messenger service would generally be disallowed since it is a normal operating expense, however, in light of the fact that it was provided at the request of the executors, reimbursement is allowed.
Account settled.