In the Matter of the Petition of LAWRENCE ATTERBURY, Appellant, to Have Determined and Enforced an Attorney's Lien.

SUFFOLK COUNTY TRUST COMPANY, as Guardian of ANNA M. PETTIT et al., Respondent.

**Attorney and client — enforcement of attorney's lien for services — Surrogate's Court — power of surrogate under statute (Code Civ. Pro. § 1903) to fix compensation of attorney — jurisdiction of Surrogate's Court and Supreme Court concurrent — when Supreme Court has fixed compensation the Surrogate's Court cannot change the amount.**

1. There is nothing in section 1903 of the Code of Civil Procedure showing an intention to deprive the Supreme Court of the jurisdiction which it possessed for many years to fix and enforce an attorney's lien by action or of the later but well-established power to do the same thing upon petition. In an action for causing death by negligence, concurrent jurisdiction is now possessed by the surrogate and by the Supreme Court, and this jurisdiction is not affected by the fact that the representative of the deceased is acting under limited letters.

2. The court at Special Term made an order on notice to the administratrix of decedent ordering her to pay her attorney, in an action in which a recovery had been had for the death of her husband through negligence of a railroad company, a certain sum as his compensation. Thereafter a trust company was appointed guardian for the minor children of deceased, which appeared when the administratrix asked permission of the surrogate to collect and distribute the judgment (Code Civ. Pro. § 1903). The order was granted but the surrogate ignored the order of the Supreme Court as to compensation of counsel and fixed the compensation of the attorney at a less sum. The attorney again applied to the Supreme Court, asking that the railroad company be directed to pay the amount theretofore fixed as his compensation by that court. The guardian opposed the motion and asked that the original order be vacated. The motion of the attorney was granted, and the motion to vacate denied. Later the guardian made an application to vacate the two orders of the Supreme Court, which was denied. An appeal was taken to the Appellate Division from all three orders by the guardian and that court reversed the last order of denial, granted the motion of the guardian, and dismissed the appeal from the first two orders. An appeal was then taken to this court from the order of the Appellate Division. *Held,* that when an order was made by the Supreme Court again fixing the attorney's lien and further ordering that the county treasurer, into whose hands the fund had been paid, pay that amount out of such funds, the remedy of the guardian was not by an independent motion to vacate the order so made but by direct appeal. Such direct appeal was dismissed by the Appellate Division and this action was not brought before this court for review, and the order of the Special Term fixing the attorney's compensation must be affirmed.

*Matter of Atterbury,* 179 App. Div. 648, reversed.

(Argued January 8, 1918; decided January 22, 1918.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 30, 1917, which reversed an order of Special Term denying a motion to vacate and set aside two former orders fixing the fees of the petitioner.

The facts, so far as material, are stated in the opinion.

*Charles Green Smith* for appellant. The Supreme Court had jurisdiction. (L. 1909, ch. 35, §§ 474, 475;

*Matter of King,* 168 N. Y. 53; *Smith* v. *Acker Process Co.,* 120 App. Div. 170; *Peri* v. *New York Central & H. R. R. Co.,* 152 N. Y. 521; *Sullivan* v. *McCann,* 125 App. Div. 126; *Matter of Cartier* v. *Spooner,* 118 App. Div. 342; *Goodrich* v. *McDonald,* 112 N. Y. 157.) It was not necessary that the infant children be separately represented, but they came into the proceeding on the second·motion. (*Lee* v. *Van Voorhis,* 78 Hun, 575; 145 N. Y. 603; *Rice* v. *Postal Tel. Co.,* 174 App. Div. 39; *Matter of Brennan,* 160 App. Div. 401.)

*John M. Ward* for respondent. The Supreme Court was without jurisdiction. (*Cunningham* v. *City of New York,* 141 N. Y. Supp. 1000; *Matter of Meng,* 159 N. Y. Supp. 535.) The Suffolk County Trust Company, as guardian of the property of the infant children, was a necessary party to any proceeding seeking to dispose of the proceeds of the action. (*Matter of Brennan,* 160 App. Div. 401.)

*Albert Massey* for James S. Meng, as executor, intervening. The attorney acquired an enforcible lien which attached to the judgment. (L. 1909, ch. 35, § 475; *Hamilton* v. *Erie R. R. Co.,* 219 N. Y. 343; *Hegerich* v. *Keddie,* 99 N. Y. 258; *Meekin* v. *Brooklyn Heights R. R. Co.,* 164 N. Y. 145; *Kelliher* v. *N. Y. C. & H. R. R. R. Co.,* 212 N. Y. 207; *Lee* v. *Van Voorhis,* 145 N. Y. 603.) The Supreme Court having acquired jurisdiction to determine and enforce a lien on its judgment by order to show cause on June 11, 1917, followed by its order of June 14, 1917, amended by order of August 6, 1917, that jurisdiction could not be divested by the action of the Surrogate's Court upon the petition of July 9, 1917, for the distribution of the fund after the payment of the lien and its order of July 14, 1917. (*Matter of Lee,* 220 N. Y. 532; *Scheuhle* v. *Riemon,* 86 N. Y. 270.)

ANDREWS, J. Leon F. Pettit was killed by the negligence of a railroad company. He left a wife and minor children. Limited letters of administration were granted to Mrs. Pettit. She retained Mr. Atterbury to bring an action against the railroad, but made no agreement with him as to compensation. The action resulted in a judgment for the plaintiff of something over sixteen thousand dollars. Mr. Atterbury then presented a petition to the Supreme Court asking it to determine and enforce the amount of his lien on the judgment. The administratrix alone was made a party to this proceeding. On June 14, 1917, the court, with the consent of Mrs. Pettit, fixed the lien at $4,189.22 and ordered her to pay that sum out of the recovery. On July 5, 1917, the Suffolk County Trust Company was made guardian of the children, and the administratrix asked permission of the surrogate to collect the judgment and distribute the proceeds, as provided by section 1903 of the Code. The order was granted, except that the surrogate, ignoring what had been done at the Special Term, directed that Mr. Atterbury be paid $1,782.22 in full satisfaction of his claim. Mr. Atterbury then again applied to the Supreme Court, setting forth the facts and asking that the original order be amended by directing the railroad company to pay the amount the court had fixed as Mr. Atterbury's lien directly to him. To this proceeding Mrs. Pettit and the railroad company were made parties. Thereupon the trust company, as guardian, presented affidavits in opposition to the motion, asking that it be denied and that the original order be vacated. The Special Term, however, granted the motion and amended the original order so that in addition to the provisions therein contained, it directed the county treasurer of Nassau county, to whom the railroad company had then paid the judgment, to pay Mr. Atterbury the amount of his lien as decreed by it. Later the trust

company made an application to vacate the two orders granted by the Supreme Court. This motion was denied. An appeal was taken to the Appellate Division from all three orders by the trust company and that court reversed this last order of denial, granted the motion of the trust company, and dismissed the appeal from the first two orders. An appeal was then taken to this court from the order of the Appellate Division.

The first question for us to decide is as to the respective powers of the Supreme Court and the surrogate with regard to the compensation of attorneys in actions brought under section 1902 of the Code of Civil Procedure.

The right to recover damages for a death caused by negligence was originally allowed in this state in 1847. Only a few years before had it been determined by our highest court that an attorney might maintain an action to recover for his services. (*Adams* v. *Stevens*, 26 Wend. 451.) But he had no lien therefor. (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 443.) At most he had a lien on the judgment that had been recovered for his costs. A lien for his services was first enforced because of the enactment of section 303 of the Code of Procedure in 1849. Thereafter he was allowed a lien after judgment for any compensation his client had agreed to pay him. (*Wright* v. *Wright,* 70 N. Y. 98.) In 1879, however, the legislature created an attorney's lien on the client's cause of action before judgment. (Code Civil Procedure, § 66.)

The provisions with regard to a cause of action in cases of death by negligence were altered by the Code of Civil Procedure in 1880. Section 1903 provided that the plaintiff might deduct from the recovery the expenses of the action, which must be allowed by the surrogate.

Therefore, in 1887, the law stood as follows: An attorney's compensation was regulated by his agreement, express or implied, with his client. It was secured by a lien on the cause of action. He might sue to establish

and enforce such a lien. (*Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 N. Y. 492.) An executor or administrator might bring an action to recover for the negligent killing of his intestate. From the judgment so recovered he might deduct the expenses of the action which the surrogate must allow him on the accounting.

With the law in this condition we held explicitly that the executor or administrator had the power to employ an attorney and to make an agreement with him for reasonable compensation. When so employed the attorney had a lien on the cause of action for the amount agreed upon, and we enforced that lien in an action in the Supreme Court. (*Lee* v. *Van Voorhis*, 78 Hun, 575; affirmed upon the opinion of HAIGHT, J., below, 145 N. Y. 603.) In other words, we refused to except this statutory action from the general rule.

In 1899 section 66 of the Code was amended so as to cover special proceedings and a clause was added giving the court power upon the petition of either the client or the attorney to determine and enforce the lien. In this form it has been carried to sections 474 and 475 of the Judiciary Law enacted originally in 1909. The remedy so provided was not exclusive but cumulative (*Fischer-Hansen* v. *B. H. R. R. Co.*, *supra*) and the fact that no jury trial is provided does not make it unconstitutional. (*Matter of King*, 168 N. Y. 53.)

Meanwhile section 1903 of the Code had remained unchanged. In 1911, however, it was amended by the insertion of the word "reasonable"— so that the plaintiff might deduct the reasonable expenses of the action. We do not understand that the existing law was altered. The word "reasonable" was always implied.

Nor do we understand that either before or after 1911 any jurisdiction was conferred upon the surrogate to determine disputes as to compensation between attorneys and clients. The surrogate acted on the accounting

between the executor or administrator and the person on whose behalf the action was brought. If on such an accounting it appeared that the amount paid an attorney was reasonable, it was to be allowed. If it was excessive the executor or administrator bore the loss. But if a court of competent jurisdiction had determined the amount of the lien to which the attorney was entitled, then the surrogate was bound by that finding.

There were obvious disadvantages in this procedure. The attorney could not be safely paid unless the amount had been fixed judicially either by an action or by a special proceeding. So, unnecessary expense was incurred.

Finally, in 1915, the surrogate was given the power to fix the reasonable expenses of an action summarily. (Code, § 1903.) This was intended to confer upon him a power that he did not before possess, the power to determine disputes between the attorney and client upon notice to both. But there is nothing in the act showing an intention to deprive the Supreme Court of the jurisdiction which it possessed for many years to fix and enforce an attorney's lien by action or of the later but well-established power to do the same thing upon petition. Had this been the purpose we think language apt and decisive would have been used. The exercise of concurrent jurisdiction by different courts is not a novelty. It is this concurrent jurisdiction which is now possessed by the surrogate and by the Supreme Court.

Our conclusion is not affected by the fact that in this case as, perhaps in most cases of the same character, the plaintiff is acting under limited letters issued under section 2592 of the Code which restrain the executor or administrator from compromising the action or enforcing any judgment until the further order of the surrogate. The object of this section is to protect the persons ultimately entitled to the recovery from loss

through the fraud or dishonesty of the plaintiff. To this end a bond is required before the judgment is paid to him. But the next of kin are only entitled to the residue after all proper expenses are paid, and the Supreme Court in no way interferes with this purpose if it fixes the amount of the lien to which the attorneys are entitled, and orders its payment directly by the defendant.

It is suggested that if two courts have concurrent jurisdiction, the one that first acts has thereafter exclusive jurisdiction in the matter. It is said that in the case at bar such jurisdiction was first acquired by the surrogate. It is a sufficient answer to this proposition that while the legal statement is correct the fact was disputed as to whether such proceedings were taken in the Surrogate's Court as gave him jurisdiction. We must assume that the Special Term decided this question in favor of the appellant and that as the order is reversed solely on questions of law that finding of fact remains undisturbed.

It is also said that the infants were necessary parties to the original order obtained in the Supreme Court; that no guardian to protect their interests had then been appointed; that as to them that order was ineffectual; that although the guardian had been appointed, it was not made a party to the proceedings which resulted in the second order; that, therefore, the motion of the guardian to vacate the original orders should have been granted.

We do not think it is necessary to determine whether in a proceeding in the Supreme Court to fix the lien of the attorney those persons ultimately interested in the judgment must be made parties. The facts do not sustain the contention of the respondent. It appeared upon the second motion and it opposed that motion upon all the grounds here argued, and asked that it be denied. That, although it stated that it appeared specially, was a general appearance on the motion. It was so treated in the recitals contained in the order.

When, therefore, an order was made again fixing the attorney's lien at $4,189.22, again directing the administratrix to pay that amount to Mr. Atterbury out of her recovery upon the judgment, and further ordering that the county treasurer pay that amount to him directly out of the funds in his hands, the remedy of the trust company was not by an independent motion to vacate the order so made but by direct appeal. Such direct appeal was dismissed by the Appellate Division and this action was not brought before us for review.

The order of the Appellate Division must be reversed, and that of the Special Term affirmed, with costs to appellant in this court and in the Appellate Division.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, CARDOZO, POUND and CRANE, JJ., concur.

Order reversed, etc.