In the Matter of the Estate of WILLIAM J. MATHESON, Deceased.

PARKE A. GALLEHER, Appellant; WILLIS D. WOOD, as Executor of WILLIAM J. MATHESON, Deceased, Respondent.

(Argued June 6, 1934; decided July 3, 1934.)

*I. Gainsburg* and *Joseph P. Segal* for appellant.

*Stephen Callaghan, Howard O. Wood* and *Elliott W. Smith* for respondent.

CROUCH, J. A citation, issued out of the Surrogate's Court of Suffolk county, was served personally upon the appellant in Washington, D. C. The appellant, appearing specially, contested the court's jurisdiction over the subject-matter of the proceeding and over the person of the appellant.

The proceeding is under section 231-a of the Surrogate's Court Act. The petition alleges that the executors retained the law firm of Wood, Cooke & Seitz to attend to all legal and tax matters arising out of the administration of the estate; that the firm was authorized to employ outside counsel; and that for all services rendered, including those by outside counsel, a stated amount should be paid to the firm. It is further alleged that the appellant, " an attorney with offices in the Metropolitan Bank Building, Washington, D. C.," was retained and rendered certain services before the Tax Unit for which he was paid; that thereafter he was retained to render further services upon an express agreement that he should be paid therefor a fixed and stated sum out of the agreed amount which the firm was to receive from the executors; that he rendered such services and was paid the agreed sum. It is then further alleged that on May 11, 1933, the appellant presented a bill for $187,456.57 for services claimed to have been rendered to the executors, and that the executors had rejected the claim. Whereupon, it is prayed that appellant's compensation be fixed and determined.

The Surrogate vacated the issuance and service of the citation upon the ground that section 231-a did not apply to attorneys of other jurisdictions. The Appellate Division reversed the order of the Surrogate, reinstated the proceeding and certified to this court the following question: " Did the Surrogate's Court acquire jurisdiction to adjudicate the claim in this proceeding?"

Section 231-a was added to the Surrogate's Court Act by chapter 526 of the Laws of 1923. It reads as follows:

" Compensation of attorneys. At any time during the administration of an estate, and irrespective of the pendency of a particular proceeding, the surrogate shall have power to hear an application for and to fix and determine the compensation of an attorney for services rendered to an estate or to its representative, or to a devisee, legatee, distributee or any person interested therein; or in proceedings to compel the delivery of papers or funds in the hands of such attorney.

" Such proceeding shall be instituted by petition of a representative of the estate, or a person interested, or an attorney who has rendered services. Notice of the application shall be given in such manner as the surrogate may direct. The surrogate may direct payment therefor from the estate generally or from the funds in the hands of the representative belonging to any legatee, devisee, distributee or person interested therein."

Prior to the enactment of that section, the scope of authority of the Surrogate's Court to deal with the compensation of attorneys had been pretty definitely marked out by judicial decision. When services had been rendered to a representative of an estate, their value could be fixed by a direct proceeding where there was a substitution of attorneys (*Chatfield* v. *Hewlett*, 2 Dem. 191; cf. 1 Jessup-Redfield on the Law and Practice in the Surrogates' Courts [1930], § 153); where a lien was asserted (*Matter of Regan*, 167 N. Y. 338, 343; *Matter of Smith*, 111 App. Div. 23); and finally, even

where there was a dispute unconnected with an asserted lien. (*Matter of Shipman*, 116 Misc. Rep. 405; affd., 200 App. Div. 896; affd., 234 N. Y. 499.) Whether those proceedings could be initiated by the representative or only by the attorney is not entirely clear. Ordinarily, the attorney seems to have been the moving party. Since the retainer was a contract only between the representative and the attorney, the determination of the value of the services went no further than to fix the amount which might properly come out of the funds of the estate. (*Matter of Smith, supra.*) The representative as an individual might conceivably be liable for more. (*Matter of Gilman*, 251 N. Y. 265, 271.) Where, however, disputes arose between an attorney and a client other than a representative, as for instance a devisee, legatee or other person interested in an estate, the Surrogate's Court had no jurisdiction. Such disputes had to be settled in another court, with consequent delay in the winding up of the estate. It has been commonly understood that the present extended general jurisdiction of the Surrogate's Court (See Surrogate's Court Act, § 40) had back of it a purpose to make possible a unification in the Surrogate's Court of all proceedings relating to decedents' estates. While section 231-a is in part declaratory of existing law, it materially broadens that law and its enactment may fairly be presumed to have been dictated by the general purpose above referred to.

Taking the facts as stated in the petition, it appears that the relationship of attorney and client existed between the appellant and the executors. The firm of Wood, Cooke & Seitz was expressly authorized to employ outside counsel. Its act was the act of the executors. While the petition is not explicit on the point, we infer that appellant was a non-resident of this State, had never been admitted here as an attorney, but had been admitted in the District of Columbia. Had he been a New York attorney, seeking to enforce his claim against the execu-

tors, there can be no doubt that the Surrogate's Court would have had jurisdiction co-ordinate with that of the common-law courts, to try, with the assistance of a jury, if seasonably demanded (Surrogate's Court Act, § 68), all issues of fact. Having jurisdiction fully to hear, try and determine that kind of dispute, we see no reason why the non-residence of the appellant and his non-admission as an attorney in the courts of this State should in any way affect that jurisdiction. As the law now stands, the authority of the Surrogate's Court to act in such a dispute rests not at all upon its inherent control over its own officers. The proceeding now, whatever it may formerly have been, is not summary but plenary. Having the right thus to enforce his claim for compensation in the Surrogate's Court, any attorney, whether admitted in this State or elsewhere, is subject to the correlative right of the executor to hale him into the same tribunal for a like purpose, if jurisdiction of his person can be had. The objection interposed to the jurisdiction over the subject-matter is without substance.

Not so, however, in respect to the objection to the jurisdiction over the person. Implicit in the proceeding as one plenary in its nature is the necessity for determining the personal rights and obligations of two parties to a contract. Whether the proceeding is commenced by the executor or by the attorney, it is in substance and effect an action to determine how much money is owing and should be paid by the one to the other. It is an action *in personam* which formerly must needs have been brought in a common-law court. That "the surrogate may direct payment therefor from the estate generally" (Surrogate's Court Act, § 231-a) does not change the essence of the proceeding. That provision harks back to the older proceeding which allowed the executor indemnity from the estate for moneys of his own reasonably and necessarily paid out. The statute has merely unified

the two proceedings; it has not changed the essential nature of either. It is still conceivable — as for instance where the retainer was for a stated sum — that the liability of the executor might be for a sum greater than the fair value of the services to the estate. Upon familiar principles applicable to proceedings *in personam*, process from the courts of this State, whether summons or citation, cannot run into a foreign jurisdiction. (*Pennoyer* v. *Neff*, 95 U. S. 714; *Dimmerling* v. *Andrews*, 236 N. Y. 43; *de Meli* v. *de Meli*, 120 N. Y. 485.)

We are of the opinion that no jurisdiction was obtained over the person of the appellant by the mere service of the citation upon him without the State.

The order of the Appellate Division should be reversed and that of the Surrogate's Court affirmed, with costs in this court and in the Appellate Division. The question certified should be answered in the negative.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN, HUBBS and LOUGHRAN, JJ., concur.

Ordered accordingly.