In the Matter of the Estate of GIUSEPPE L. MAGGIO, Deceased.

Surrogate's Court, New York County, December 13, 1938.

*Brodek & Eisner* [*Louis P. Eisner* of counsel], for the petitioners.

*Kurzman & Frank* [*Samuel B. Seidel* of counsel], for the administratrix.

*Patrick J. Walsh*, appearing in person.

*Louis L. Bucciarelli*, for Vincent Maggio and another, distributees.

*John W. Guzzetta*, for Louis Maggio, Salvatore Maggio and Alfonso Maggio, distributees.

*Rosario Maggio*, appearing in person, distributee.

*Abraham J. Halprin*, for the Batavia Times Printing Company, creditors and various attorneys appearing for creditors, assignees and lienors.

FOLEY, S.   In the present phase of this proceeding two questions are presented to the surrogate for determination: (1) Whether attorneys who have rendered services to certain of the next of kin of the decedent are entitled to have their liens enforced for the reasonable value of their services, or the agreed amount of their compensation?   (2) Whether such lien is entitled to a preference over assignments made by their clients to other persons?

There is ample power in statute and decisions to protect the attorneys by the establishment of such a lien and when established to grant precedence over any attempted assignment or conveyance of the share of the beneficiary.   Before the enactment in 1923 of

section 231-a of the Surrogate's Court Act, this court possessed unquestioned power to fix the compensation of an attorney for services rendered the executor, administrator or other representative of an estate. There was doubt, however, as to the authority of this court to fix the lien of an attorney who represented a person interested, either distributee, legatee or other beneficiary, and to direct payment out of his share of the estate. The new section as then enacted provided a comprehensive method of procedure in disputes between the representative and his attorney or between the beneficiary and his attorney. (*Matter of Parsons*, 121 Misc. 747; affd., 208 App. Div. 769; *Matter of Matheson*, 265 N. Y. 81.)

It is urged here that the lien or charge of an attorney for a beneficiary may only be applied where the attorney has been successful in recovering a distributive share or legacy or beneficial interest or in increasing the share for the benefit of his client. That contention is unfounded in law and must be overruled. Even before the enactment of section 231-a, recognition had been given to the rights of an attorney where there was a fund in process of judicial administration and where the attorney had rendered services in defending its reduction or in sustaining the status or interest of his client and regardless of any increase of pecuniary rights. (*Matter of Regan*, 167 N. Y. 338; *Matter of Fitzsimons*, 174 id. 15; *Matter of Williams*, 187 id. 286.)

With the creation of the additional statutory power accorded in section 231-a, however, any doubt as to the plenary jurisdiction of the court to fix the charge of the attorney and to sustain it by way of priority over assignments was comprehensively covered by the language of that section. The basis of the authority granted by the new section was the existence of the fund of the client in the process of administration under the supervision of the court. The new procedure was assimilated to the determination of a charging lien under section 475 of the Judiciary Law. Previously the attorney or the beneficiary was remitted to a proceeding in the Supreme Court or to an action at law with resulting expense and delay. The new section provided that the surrogate might " direct payment  *  *  *  from the *funds in the hands of the representative belonging to any legatee, devisee, distributee or person interested therein.*" Thus persons dealing with beneficiaries by way of assignment or conveyance were given notice in law that their assignments were subordinate in precedence to the primary right of the attorney for the beneficiary to obtain compensation out of the share of such beneficiary.

" His position has become the same as that of an equitable assignee.  *  *  *  No longer is it true that his services up to

judgment are solely on ' the personal security of his client ' and that anything beyond is ' a mere casual advantage.' " (CARDOZO, J., in *Beecher* v. *Vogt Manufacturing Co.*, 227 N. Y. 468.)

On the question of precedence it has been repeatedly held that where the lien of the attorney is once established, it may not be defeated by subsequent assignments by the client or by a collusive attempt to pay over the fund to the client. (*Fairbanks* v. *Sargent*, 117 N. Y. 320; *Goodrich* v. *McDonald*, 112 id. 157, 163; *Matter of Regan*, 167 id. 338; *Beecher* v. *Vogt Manufacturing Co.*, 227 id. 468; *Matter of Lexow* v. *Tremaine*, 252 App. Div. 307; affd., 277 N. Y. 657.)

The lien " was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained." (*Goodrich* v. *McDonald*, 112 N. Y. 157, 163.)

Surrogate WINGATE has thoroughly reviewed the nature of the remedies in two recent decisions. In *Matter of Abruzzo* (139 Misc. 559) the services were rendered not only in proceedings in the court, but also in a proceeding for the construction of the will in the Supreme Court and included all services rendered in the estate to the time of the final decree. The lien or charge was upheld. In *Matter of Jaffe* (162 Misc. 877, at p. 879) he said: " Proceedings in Surrogates' Courts looking to the settlement and distribution of estates differ in several aspects from ordinary litigations. This is particularly marked when the relationship thereto of a legatee or statutory distributee is in question. Such a person differs from the ordinary plaintiff in the usual civil litigation in that he is customarily entitled to receive some recovery no matter what the outcome of the litigation may be. In most cases his concern is not respecting the right to a recovery but as to its amount. It follows, therefore, that in the Surrogate's Court an attorney who represents one entitled in all events to some distribution possesses a lien on the distributable share of his client if his mode of representation complies with the requirements of section 475 of the Judiciary Law, since in effect, any pleading, particularly to an account, asserts a ' counterclaim,' or to speak less metaphorically, alleges a right to a recovery against the accountant."

With that reasoning the surrogate here is in accord.

I hold that under the present statute the reasonable compensation of the attorney who renders any services in the estate for a beneficiary constitutes a primary charge upon the pecuniary interest of the client in the estate. One of the attorneys here has rendered services in the several proceedings in this court

including the pending contested accounting. He was retained under a written agreement in which his clients agreed to pay him seven and one-half per cent of the amount ultimately paid out of the estate. The lien, under his agreement, is sustained in precedence over the rights of the assignees of his clients.

Other attorneys have rendered services to other distributees either in prior proceedings in the estate in this court or in the accounting proceeding. A similar determination is made as to their rights.

The surrogate fixes the reasonable compensation of the attorneys Brodek & Eisner and directs payment as a lien out of the shares of their clients as follows: $100 as against Louis Maggio; $100 as against Alfonso Maggio; $200 as against Salvatore Maggio.

A further hearing will be held on the remaining issues on the 28th day of December, 1938, at ten-thirty A. M. These issues are: (1) The fixation of the compensation and lien of Mr. Guzzetta as attorney; (2) the fixation of the compensation and lien of Mr. Walsh as attorney; (3) the allocation of the amount of the assignment of the Batavia Times Company and particularly whether the amount found due under the assignment is a charge against the three distributees who became judgment debtors or the five distributees jointly and severally upon the contention that Rosario Maggio was the agent for all of them.