In the Matter of the Accounting of Avis B. Miller, as Executrix of Lottie C. Britton, Deceased.

Surrogate's Court, Monroe County, March 12, 1946.

*Meyer Fix* for John Van Voorhis' Sons, petitioners.

*Ward N. Britton,* respondent in person.

WITMER, S. This is an application under section 231-a of the Surrogate's Court Act by John Van Voorhis' Sons, attor-

neys, to have the court fix and determine their compensation for legal services which they rendered to Ward Britton, a beneficiary under the will of Lottie C. Britton, deceased, and to direct the payment thereof by the executrix of said estate from the share of said Ward Britton therein. Mr. Ward Britton has appeared in his own behalf without counsel, has interposed an answer and has demanded a jury trial of the questions of fact raised. Petitioners object to respondent's demand for jury trial. I hold that the respondent is not entitled to have the issues herein tried before a jury.

The petitioning attorneys have performed legal services for the respondent in connection with the estate of Lottie C. Britton over a period of several years. Their papers tend to show that such services have enhanced the value of respondent's interest in the estate, have hastened the day of distribution, and have saved respondent from certain costs and expense. Upon a judicial settlement of the accounts of the executrix of the estate in December, 1945, petitioners sought to have their services paid out of the estate as a whole. Surrogate JOSEPH M. FEELY, my predecessor, denied such request, although he made a nominal allowance to petitioners for instituting the compulsory accounting proceedings. Petitioners then secured an order returnable before Surrogate FEELY on December 29, 1945, requiring the executrix of said estate to show cause why the Surrogate's decision denying petitioners' application to charge the estate as a whole for their said services should not be reconsidered and the estate so charged, and if said application were again denied, requiring Ward Britton to show cause why payment for such services should not be made from his share in the said estate. The service of such show cause order was not made upon Ward Britton. Upon the return date petitioners' reapplication was denied as against the estate, but without prejudice to their "right to obtain recompense by a proceeding against * * * Ward Britton individually in any competent court." Ward Britton has appealed to the Appellate Division from the decision of Surrogate FEELY and the decree entered thereon denying petitioners' prayer for payment out of the general estate.

It appears that Mr. Britton has discharged petitioners as his attorneys. Permission was granted to the petitioners to issue supplemental citation to acquire jurisdiction over Ward Britton to enforce petitioners' rights herein against him, and the matter was adjourned to January 29, 1946. Upon such return date the matter came on before me, and Ward Britton

appeared in his own behalf without counsel. He was instructed to make such answer or file such papers as he saw fit by February 7th, to which date the matter was adjourned. On that date respondent filed an "answering affidavit" in which he claimed that the respondents had agreed with him when he employed them to perform the required legal services for such sum as the Surrogate would allow to them out of the estate, that he would not be charged personally for such services, and that since the Surrogate has allowed only $250 to respondents, they are limited to such sum, unless the appeal be successful. In the course of argument at the time Ward Britton filed said "answering affidavit", he stated that he had assigned his interest in the estate and had agreed not to encumber it in any way. He also asserted his right to have the issue tried by jury, but he filed no such demand in writing on that day. He was advised by the court that any further answer, affidavit or demand which he wished to make should be in writing and filed with the clerk, and the matter was adjourned one day for such purpose. On the next day, February 8th, respondent filed a verified "answer", in which he included and amplified the claims made in his "answering affidavit", asserted that petitioners' services were not worth $4,000 as claimed, and demanded "a jury trial of the questions of fact as to whether or not such contract was made and as to the value of such services, if it should be held that said contract was not entered into."

Petitioners claim that respondent is not entitled to jury trial as of right, that such demand for jury trial was made too late and hence any right thereto which respondent had was waived by his conduct.

Section 67 of the Surrogate's Court Act provides that "such [jury] trial shall be deemed waived unless such party personally or through his attorney * * * appears and demands the same in writing." Here Ward Britton made only an oral demand for jury trial at the time he filed his original "answering affidavit". Because he was appearing personally without counsel, Mr. Britton was granted an additional day in which to file an answer or demand or such other papers as he might wish, and on that next day he filed his written answer, which embodied a demand for jury trial. Such demand is held sufficient.

The question of respondent's right to jury trial is more difficult. Because of the apparent varying views which our courts and text writers have taken on this matter, I am setting

forth my analysis of the authorities and the reasons for my holding.

The right to jury trial is contained in section 68 of the Surrogate's Court Act, which provides for a jury trial of controverted questions of fact (1) in a proceeding for the probate of a will and (2) in any other case where any party has a constitutional right of trial by jury. A great deal has been written as to the meaning of the latter. I shall not attempt to review the reasoning that appears in the cases in this respect. Section 2 of article I of the New York State Constitution of 1938 provides in part "Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever * * *." Section 425 of the Civil Practice Act, pursuant to the mandate of the Constitution, provides for jury trial in actions for a sum of money only, and in certain other actions. It has been held that the constitutional provision means that the right to jury trial of the controverted issue must have existed in 1894. (*Matter of Leary,* 175 Misc. 254.) But prior to 1914 the right to jury trial in Surrogate's Court was virtually nonexistent. In respect to certain issues concerning real estate and the probate of wills a jury trial might be had, but not in Surrogate's Court. The matter was sent to the Supreme Court for trial. In 1914 provision was made for jury trial in and by the Surrogate's Court (Code Civ. Pro., §§ 2537, 2538; L. 1914, ch. 443). Section 231-a of the Surrogate's Court Act under which the application herein is brought was enacted into law by the Legislature in 1923 (L. 1923, ch. 526). The Surrogate's Court has always been recognized as primarily a court of equity. The Legislature could easily have provided for a jury trial in section 231-a of the Surrogate's Court Act. It has often done so in respect to other proceedings. (See 4 Wait on New York Practice [4th ed.], pp. 189–190.) But it did not do so here. Can it be said then that the right to jury trial in proceedings similar to those provided for under section 231-a of the Surrogate's Court Act existed prior to 1894?

The courts have groped their way on the present subject. An apparent analogous situation has been the question of the right to jury trial in discovery proceedings under sections 205 and 206 of the Surrogate's Court Act. Shortly after the amendment to the Surrogate's Court Act providing for jury trials of certain issues therein, Surrogate FOWLER held that there was no right to jury trial in a discovery proceeding. (*Matter of Callahan,* 95 Misc. 438.) However, that holding was later over-

ruled and it is now well established that a right to jury trial exists in a discovery proceeding, where the answer raises the question of title. (*Matter of Nutrizio,* 211 App. Div. 8; *Matter of Comfort,* 234 App. Div. 19; *Matter of Wilson,* 252 N. Y. 155.) However, such a proceeding is similar to a replevin action at common law, as to which there has always been a right to jury trial.

In a proceeding under section 206-a of the Surrogate's Court Act enacted in 1934 (L. 1934, ch. 539) it was held that the petitioner was not entitled to jury trial. (*Matter of Leary,* 175 Misc. 254, *supra.*) It was there noted that an application under this section is not in the nature of a discovery proceeding, but merely codified a procedure and practice which had long been used in Surrogate's Court under its equitable powers. The fact that the claimant could have sued in another court and demanded jury trial was not decisive. He had chosen the tribunal which he desired to hear his case, and was bound by the practice of that court. However, in another proceeding under section 206-a of the Surrogate's Court Act, Surrogate HENDERSON held that the administrator-respondent had an absolute right to jury trial of the issue of title which he raised in his answer, the proceeding being in the nature of a replevin action. (*Matter of Abend,* 176 Misc. 717.) The court held that the petitioner could not deprive the administrator of his right to trial by jury by selecting the Surrogate's Court as the tribunal to try the issues.

Returning to the immediate problem of the right to jury trial under section 231-a of the Surrogate's Court Act, we find that there has been even greater uncertainty. In *Matter of White* (100 Misc. 56) under facts almost identical with those in the case at bar, the court held that there was no right to jury trial. The court cited *Matter of Callahan* (95 Misc. 438, *supra*) which we have shown no longer represents the law.

Petitioners urge that the matter has been definitely decided in their favor in the leading case of *Matter of Pardee* (145 Misc. 634, affd. 239 App. Div. 876 [4th Dept.]) wherein jury trial was denied of an issue as to fees between an executor and his attorneys. Several leading textbook writers have stated that no right to jury trial exists in Surrogate's Court respecting an issue of fees between attorney and client. (See 2 Bradford Butler on New York Surrogate Law and Practice, § 1729; Harris' Estates Practice Guide, p. 1040; 7 Wait on New York Practice [4th ed.], p. 221.)

It should be noted that in the *Pardee* case (*supra*) mention was made in the opinions of both the Surrogate and the Appel-

late Division that the proceeding before the court was not like an action to recover the value of petitioner's services against the executors personally as beneficiaries only, and it was stated that the proceeding was equitable in its nature.

In *Matter of Griffith* (103 Misc. 562), the Surrogate makes a similar distinction in denying jury trial of such an issue between the executors and their attorney. In Warren's Heaton on Surrogates' Courts (Vol. 1, 6th ed., § 108, par. 2, subd. [j], p. 706), the author discusses the differentiation noted in the *Pardee* and *Griffith* cases, and adds: " It should be noted that section 231-a gives an attorney a right to have his fees fixed not only against the legal representatives of the estate but against a devisee, legatee, distributee or any person interested therein. Where a proceeding is brought under that section against an individual and not a legal representative, therefore, it would seem that a constitutional right of trial by jury would exist."

If the decisions ended there, we would only have the problem of deciding whether the instant case comes within the class as above differentiated, and if so, whether such inferential dicta should be followed as a governing principle of law. But there have been other decisions.

The Court of Appeals in *Matter of Matheson* (265 N. Y. 81, 85) points out that section 231-a of the Surrogate's Court Act is declaratory of the law existing at the time of its enactment in respect to the power of the court to fix the compensation of the attorneys for the legal representatives of estates, but that the section " materially broadens that law " in respect to the power of Surrogates' Courts to decide disputes " between an attorney and a client other than a representative, as for instance a devisee, legatee or other person interested in an estate ". The court then by way of dictum adds (p. 86) that in a proceeding between an executor and his attorney to determine fees, the Surrogate's Court has " jurisdiction co-ordinate with that of common-law courts, to try, with the assistance of a jury, if seasonably demanded (Surrogate's Court Act, § 68), all issues of fact." This dictum is definitely contrary to the *Pardee* case (145 Misc. 634, *supra*) and the like authorities cited with it. It has been followed as the law of the State. (*Matter of McKevett*, 253 App. Div. 919; *Matter of Evans*, 177 Misc. 381, revd. on other grounds 264 App. Div. 645.) In *Matter of McKevett* (*supra*) the court had under consideration demands for jury trial of issues between the administrators and their attorneys and the said administrators individually as distributees and their attorneys. That raised both questions here

discussed. The court had an opportunity to make the distinction suggested in the *Pardee* case (*supra*), but did not discuss it. It held that the administrators, individually and as representatives of the estate, were entitled to jury trial as of right and that " The earlier cases to the contrary must be deemed to have been overruled by *Matter of Matheson* (265 N. Y. 81)." This case, therefore, in reliance on said dictum overrules *Matter of Pardee* (*supra*).

In *Matter of Anderson* (136 Misc. 110, 112) Surrogate WINGATE stated by way of dictum with reference to section 231-a: " On ordinary principles, either party is entitled to a jury trial of the issues, if demanded."

However, despite the *McKevett* case (*supra*) and the dicta above mentioned I am constrained to believe that there is sound basis for denying a jury trial under the circumstances as here presented.

As above noted the right to jury trial is determined by the practice of the courts and the rights of individuals in similar controversies at the time of the adoption of the Constitution, or as late as 1894. Since virtually no right to jury trial in Surrogate's Court existed at that time, we have to consider what were such practices and rights in the Supreme Court at that time. (See *Matter of Blair,* 242 App. Div 689.) Except where the contrary is expressed in the Surrogate's Court Act the practice of the Supreme Court applies in this court. (Surrogate's Ct. Act, § 316.) In proceedings for determining the valuation of the services of an attorney to his client, Supreme Court and Surrogate's Court have concurrent jurisdiction. (*Matter of Matheson,* 265 N. Y. 81, *supra; Matter of Atterbury,* 222 N. Y. 355, 360; *Matter of Regan,* 167 N. Y. 338; *Matter of Dugan,* 147 Misc. 776; 2 Bradford Butler on New York Surrogate Law and Practice, § 1726; and see Judiciary Law, §§ 474, 475.) It seems, therefore, that the inquiry in this respect narrows to the question: Were the parties in such a matter in the Supreme Court entitled to jury trial? There is much authority in the negative.

In *Matter of King* (168 N. Y. 53), a trustee of a New Jersey estate had brought suit in New York for certain controverted securities, and recovered them. While they were still in the State a proceeding was brought by the attorneys for the trustee under section 66 of the Code of Civil Procedure (the predecessor of sections 474 and 475 of the Judiciary Law) to establish a lien on the securities and have the amount thereof determined. The court stated (pp. 58–59) concerning said section 66: " It

is a new remedy for the enforcement of an existing right
* * *. We do not understand the clause to be violative of
the provisions of the Constitution, or that the parties were
entitled to a jury trial. In this case the petitioners had a lien
created by statute. The proceedings provided for by the Code
are instituted by a petition and are in the nature of the fore-
closure of a lien. The appointment of a referee may have been
in the discretion of the court. The Special Term undoubtedly
could have retained the proceedings, tried out the question
as to the value of the petitioners' services and determined the
rights of the parties without a referee, but the petitioners were
entitled to have their rights determined by the court either with
or without the aid of a referee. The court could not prop-
erly, in the exercise of its discretion, deprive the petitioners of
this remedy. The remedy given is equitable in character, and
we think the equity side of the court has jurisdiction. It is,
in some respects, analogous to the foreclosure of mechanics'
liens, in which it has been held to be an action in equity triable
by the court without a jury. (*Kenney* v. *Apgar,* 93 N. Y. 539,
550; *Goodrich* v. *McDonald,* 112 N. Y. 157.)

" In *Goodrich* v. *McDonald* (*supra*), EARL, J., in delivering
the opinion of the court, after quoting from Lord MANSFIELD,
says: ' The lien as thus established is not strictly like any other
lien known to the law, because it may exist although the attor-
ney has not and cannot in any proper sense have possession of
the judgment recovered. It is a peculiar lien to be enforced by
peculiar methods. It was a device invented by the courts for
the protection of attorneys against the knavery of their clients
by disabling clients from receiving the fruits of recoveries with-
out paying for the valuable services by which the recoveries
were obtained. The lien was never enforced like other liens. If
the fund recovered was in possession or under the control of the
court it would not allow the client to obtain it until he had paid
his attorney, and in administering the fund it would see that the
attorney was protected.' "

In *Matter of Atterbury* (222 N. Y. 355, 360, *supra*) the court
held in respect to section 475 of the Judiciary Law that " the
fact that no jury trial is provided does not make it unconstitu-
tional." (And see *Fischer-Hansen* v. *Bklyn. Heights R. R. Co.,*
173 N. Y. 492.) In *Ackerman* v. *Ackerman* (14 Abb Prac. 229
[1862]) the court considered the client's right to jury trial in
a proceeding by an attorney to ascertain the fact and amount
of his lien, and said (235–236): " The simple answer to the
objection is, that the power which a court exercises in the mat-

ter of an attorney's lien is an equitable one, in which the aid of a jury is not necessary, and cannot be demanded as a matter of right. In Wilkins *a.* Carmichael (*Doug.,* 100), which is the first reported recognition of it in the common-law courts, Lord MANSFIELD refers to it as a practice established upon general principles of justice, by which an attorney may obtain an order to stop his client from receiving money recovered in a suit in which the attorney was employed, until his bill is paid. It was introduced into the common-law courts from the Court of Chancery (Turwin *a.* Gibson, 3 *Atk.,* 720), and like the practice of setting off judgments, and other equitable powers incident to courts of common law, it has always been a matter of equitable cognizance. The mistake lies in confounding a right of trial by jury,— which would exist if the attorney had brought an action against his client, and sought to obtain a judgment,— with a proceeding for an equitable application of fund under the control of the courts.''

This latter quotation contains the important point to be considered, namely, whether a proceeding in effect is one at law to secure a money judgment or one in equity to enforce an equitable lien. When it is the latter, the matter is determined by the court without a jury. (*Matter of Goldin* v. *Duncan,* 216 App. Div. 472; *Matter of Pieris,* 82 App. Div. 466, affd. 176 N. Y. 566; *Matter of Popek* [Bernhardt], 157 Misc. 421; *Matter of Levine,* 154 Misc. 700; *Matter of Podell,* 138 Misc. 6; *Machcinski* v. *Lehigh Valley R. Co.,* 272 F. 920; *NIC Projector Corporation* v. *Movie-Jeckter Co.,* 16 F. Supp. 605.)

The first part of section 474 of the Judiciary Law provides the basis for the relation between the attorney and his client, as follows: '' The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law * * *.'' An action by an attorney against his client on such an agreement or contract not connected with an application to fix and enforce a lien upon a fund within the court's jurisdiction, would be a simple action at law, triable by a jury. That is the type of action differentiated in the quoted portion of *Ackerman* v *Ackerman* (14 Abb. Prac. 229, *supra*) above. It may be that such was the type of action which the courts had in mind in the dicta above referred to. However, the Surrogate's Court never had and does not now have jurisdiction over that type of an action. (*Matter of Lake,* 219 App. Div. 530; *Matter of Smith,* 111 App. Div. 23; **and see** *Matter of Anderson,* 136 Misc. 110 *supra; Matter of Post,* 155 Misc. 389.)

But section 475 of the Judiciary Law provides for an attorney's lien and the manner of determining and enforcing the same. As shown by the above-cited cases, all proceedings under this section have been held equitable in nature, and no right to jury trial exists in respect thereto.

It is clear that an attorney for an executor or administrator has no lien for his services on the personal share in the estate of such estate representative. (*Matter of Rabell*, 175 App. Div. 345.) The case holds that it would be inconsistent and unethical for the attorney for the executor or administrator to represent such client in his individual capacity, unless he were also the sole beneficiary. In the instant case, however, petitioners did not represent the estate, but only the respondent-beneficiary. Through petitioners' efforts an accounting was had and an extensive examination made of the executrix' conduct of the estate and of the affairs of a corporation of which the estate is the sole stockholder, and certain costs and expenses which were sought to be charged against respondent were ordered paid from the estate generally. For such services petitioners have a lien upon respondent's share in the estate, which this court has the authority and the duty to fix, determine and enforce. (*Matter of White*, 100 Misc., 56 *supra; Matter of Abruzzo*, 139 Misc. 559; *Matter of Levine*, 154 Misc. 700, *supra; Matter of Frame*, 162 Misc. 34; *Matter of Jaffe*, 162 Misc. 877; *Matter of Maggio*, 169 Misc. 1039; and *Matter of Ufland*, 175 Misc. 996; *Matter of Fitzsimons*, 174 N. Y. 15.)

In *Matter of Ufland* (*supra*, p. 996), the court held " The lien of the attorney in every such case is entitled to protection and enforcement in the Surrogate's Court." In *Matter of Levine* (157 Misc. 700, *supra*) the moving papers did not refer to the petitioner's lien under section 475 of the Judiciary Law, but the court declared such a lien existed and enforced the same. In *Matter of Frame* (*supra*, pp. 36–37) the court stated " Of course, an attorney who has rendered services in the Surrogate's Court either for a creditor or for a legatee, next of kin or other beneficiary, in the procurement of a recovery is entitled to be compensated and to the enforcement of his lien and these rights may not be defeated by a collusive or fraudulent assignment of his client's share of the estate."

In *Matter of Maggio* (*supra*, p. 1040) the court said that the enactment of section 231-a of the Surrogate's Court Act removed " any doubt as to the plenary jurisdiction of the court to fix the charge of the attorney and to sustain it by way of priority over assignments * * *. The basis of the authority

granted by the new section was the existence of the fund of the client in the process of administration under the supervision of the court. The new procedure was assimilated to the determination of a charging lien under section 475 of the Judiciary Law.''

It appears, therefore, that a proceeding under section 231-a is similar to one under section 475 of the Judiciary Law wherein no right to trial by jury has ever existed. The proceeding is equitable in nature. The above authorities show that an attorney's lien under section 475 of the Judiciary Law may be determined and enforced by the Surrogate's Court in a proceeding without a jury. It follows that no right to jury trial exists here under section 231-a of the Surrogate's Court Act.

The Surrogate is called upon daily to determine the fair and reasonable value of legal services rendered. From his training and experience he is deemed particularly well qualified to perform this function of his court. He is able to decide such matters quickly and inexpensively. To make the question of legal fees subject to jury trial in every instance, would place an undue burden on the bar, the court and the public. It would greatly increase the expense of such determinations to the parties and the community, and would unduly hinder and delay the other work in a busy court. In *Matter of Appleby* (163 Misc. 71, 72) Surrogate FOLEY stated in respect to a demand for a jury trial of a claim to be a common-law wife: '' There has never been any great difficulty in the determination of this type of issue by the court without a jury. * * * A fair and expeditious trial may be had without a jury with the least amount of delay.''

The relationships and agreements between attorneys and their clients have always been subject to the courts' closest scrutiny and have been viewed in the light of equitable principles. (See cases *supra,* and 2 Bradford Butler on New York Surrogate Law and Practice, § 1723) . That it has been generally understood that no jury trial exists under present circumstances is evident from the fact that in the many cases which have arisen in our Surrogates' Courts in respect to attorneys' fees, such matters have uniformly been decided without a jury. The only case actually holding to the contrary that has come to our attention is *Matter of McKevett* (253 App. Div. 919, *supra*) which as above noted, based its decision upon the dictum in *Matter of Matheson* (265 N. Y. 81, *supra*). In discussing *Matter of Matheson (supra)* Surrogate DELEHANTY said in *Matter of Hall* (183 Misc. 659, 660) : '' Undeniably the language

in which the opinion of the court in the cited case is couched lends color to the position taken by the moving party. However, trial courts have been admonished by our highest court that they must look with care at the factual background against which the decision of the court is made and that they are to regard *as the expression of the court* only so much of the comment in an opinion as is necessary to the decision reached on the facts presented by the record before the court.''

The practice of the courts in respect to jury trials in such matters is too important to be altered on the strength of inferences to be drawn from incidental remarks of the court, as in *Matter of Pardee* (145 Misc. 634, *supra*) and *Matter of Griffith* (103 Misc. 562, *supra*) or from the dictum in *Matter of Matheson* (*supra*). It should only be changed after careful consideration of the point when directly before the court. This is such a case and, if appealed, will afford the higher courts an opportunity to settle the matter. An affirmance of this decision would necessarily be a confirmation of the decision in *Matter of Pardee* (*supra*).

However, the questions of fact raised herein cannot be determined on the papers alone. Oral proof should be made to supplement the affidavits, and an opportunity should be afforded to respondent to cross-examine petitioners and to present his defense. (*Matter of Maggio*, 169 Misc. 1039, *supra; Matter of Post*, 155 Misc. 389, *supra; Matter of Dugan*, 147 Misc. 776, *supra*.) For this purpose, the case is set down for hearing on March 21, 1946, at 10:30 A.M.

Submit decree denying jury trial and fixing date of hearing in accordance herewith.