Joseph A. Cox, S.
There remain for disposition applications by attorneys for determination of their compensation (see N. Y. L. J., Nov. 15, 1957, p. 7, col. 5). The bitterly fought contests in this estate and in the related estate of Benjamin B. Davis were once thought to have been brought to a close by a stipulation of settlement dated March 29, 1956. That stipulation provided for substantial allowances to all counsel. • It determined some issues and it outlined the steps to be taken thereafter to terminate the remaining difficulties. It presupposed prompt and full performance of the promises therein made and compliance in good faith with all of the requirements therein specified. That stipulation explicitly stated that “ All attorneys’ fees provided for by this stipulation shall be compensation for all services heretofore rendered in all proceedings and for all services to be hereafter rendered therein and in the performance of the various terms and conditions of this stipulation and no further application for fees and allowances out of the assets of the Estates or Trusts shall be made by any party or his attorney.” (Emphasis added.)
After the stipulation was signed and approved, the parties resumed full scale hostilities. This court has heretofore observed that none of the parties appeared to be willing to perform any onerous condition required of him, but all of them were anxious to hold everyone else to the letter of the contract (N. Y. L. J., May 9,1957, p. 6, col. 7). It is not now possible to apportion among the parties the responsibility for any particular failure of performance. It is sufficient to say that all of the parties must bear some measure of blame. As a result of their intransigence, some additional legal services, not within the scope of the stipulation, were made necessary. Counsel are not, however, entitled to additional compensation from the general estate for services made necessary only by the difficulties of dealing with their own client.
The following rulings are accordingly made:
(1) Attorney for the executors: He cannot be allowed any additional compensation from the estate for assisting in the performance of the terms of the stipulation or for services that were made more difficult by the refusal of either of the executors to honor the agreement in letter and spirit. Other transactions and defaults, not attributable solely to the fault of the executors, *349 did necessitate additional services. The supplemental accounting became complicated and contested; the default on the notes and the consequent action to recover the full amount called for additional services; the litigation over the retainer of counsel in the Supreme Court action and the refusal of the income beneficiary to turn over the jewelry necessitated further legal services. His additional compensation for all these additional services in this estate is fixed in the sum of $1,100.
(2) Attorneys for coexecutor Becker. Under the terms of the stipulation no further application is to be made for services contemplated by that agreement. The attorney for both executors was obligated to perform the legal services on behalf of the executors that were required by the stipulation, and he has done so. For the services in the Supreme Court action, the estate of the now deceased attorney is entitled to compensation, but his statement in court just prior to his death places only a nominal value upon such services. He is allowed $350 for such services. No allowance from the estate may be made for services in the motions to compel the executors to perform their promises made in the stipulation. For other services necessarily rendered in the proceeding, compensation of the attorneys is fixed in the sum of $600.
(3) Attorneys for the income beneficiary. Under the terms of the stipulation, substantial sums have been allowed from the principal of this and related estates to counsel retained by the income beneficiary. They now seek a large additional sum, and they ask that it be charged against their client’s share of this and the Benjamin B. Davis estate. Her interest in both estates is that of income beneficiary only, and hence any allowance can be charged only against income due her. In the alternative, counsel ask that for any services that are found to benefit the estate generally, the allowance be paid from principal.
In respect of that part of the application which seeks payment from the general estate, the court finds that none of the services were of benefit to the estate and that no further payments are to be made to these petitioners from principal of either estate.
That part of the application which seeks payment from income is based upon section 231-a of the Surrogate’s Court Act which, insofar as material here, authorizes the Surrogate to fix the compensation of an attorney “for services rendered * * * to a devisee, legatee, distributee or any person interested therein ’ ’, and to direct payment thereof ‘' from the funds in the hands of the representative belonging to any legatee, *350 devisee, distributee or person interested therein.” That part of the statute which relates to an attorney for the fiduciary or an attorney who has rendered services of benefit to the general estate, is of no concern to us at the moment. Such authority and the principles from which it flows are too well understood to require comment herein. (Matter of Matheson, 265 N. Y. 81, 84r-85; Matter of Proctor, 267 N. Y. 109; Matter of Parsons, 121 Misc. 747, 749, affd. on the opinion of Foley S., 208 App. Div. 769; Matter of Anderson, 136 Misc. 110, 111.) All discussion of the statute in the remainder of this decision will be understood to refer only to such portion as grants authority to fix the compensation of an attorney for beneficiaries under the will despite the objection of the client.
A dispute between an attorney and his legatee-client depends upon a private contract between attorney and client and, if there were no specific statutory authority, would be outside the jurisdiction of this court “ even if the source of the contract payment is to be found in some interest in the estate ”. (Matter of Leblang, 159 Misc. 322, 323.) However, the Surrogate’s Court, at least from the time it became a court of record, possessed the same power as other courts of record to protect and enforce the lien of an attorney against a fund which was the subject of a proceeding before it. (Matter of Regan, 167 N. Y. 338, 343; Matter of Fitzsimons, 174 N. Y. 15, 20; Matter of Abruzzo, 139 Misc. 559; Matter of Jaffe, 162 Misc. 877.) The statutory authority to enforce attorneys’ liens against the fund recovered by the client was originally section 66 of the Code of Civil Procedure, which was later carried into sections 474 and 475 of the Judiciary Law (Matter of Atterbury, 222 N. Y. 355, 360; Matter of Abruzzo, supra, p. 562), and finally found particular expression in estate matters in section 231-a of the Surrogate’s Court Act (Matter of Maggio, 169 Misc. 1039,1040). Section 231-a now defines the jurisdiction of the Surrogate to direct payment of counsel fees to an attorney for a beneficiary. (Matter of Lake, 219 App. Div. 530.)
Enacted in 1923 (L. 1923, ch. 526), section 231-a was in part merely declaratory of existing law and in part somewhat of a broadening of the court’s authority. Its enactment may fairly be presumed to have been dictated as part of the general legislative effort to unify in the Surrogate’s Court all proceedings relating to decedent’s estates to the end that estates can be closed finally and effectively without unnecessary delay. (Matter of Matheson, 265 N. Y. 81, 85, supra; Matter of O’Brien, 146 Misc. 555, 559.) Insofar as counsel for estate representa *351 tives are concerned, the scope of the statute is broad. But insofar as attorneys for estate beneficiaries are concerned, the “basis of the authority granted by [section 231-a] was the existence of the fund of the client in the process of administration under the supervision of the court.” (Matter of Maggio,. supra, p. 1040.) Other than the authority granted by this section, the Surrogate ‘' has no power to direct payment otherwise by any individual * * * nor is his power enlarged by section 475 of the Judiciary Law which gives merely power to ‘ enforce the lien.’ ” (Matter of Lake, supra, p. 531.)
While the Surrogate’s power to direct payment of the fee depends upon the existence of a fund in which the client has a share, the authority granted by section 231-a is not limited only to such services as are rendered in this court. On the contrary, it has been held to extend to all services rendered by the attorney which are directed toward the procurement of a decree fixing and determining the rights of his client, even though several separate proceedings were required to achieve the final result and even though some of them were in other courts. (Matter of Abruzzo, 139 Misc. 559, 563, supra; Matter of Proffen, 175 Misc. 447, 448). However, it is likewise well settled that authority to fix counsel fees does not extend to services which are independent of the estate interest and which are not directed toward defining and preserving that interest. (Matter of Anderson, 136 Misc. 110, 111, supra; Matter of Post, 155 Misc. 389, 391; Matter of Cole, 77 N. Y. S. 2d 275, 277).
Limitations on the power to settle summarily a dispute between attorney and client are not peculiar to the Surrogates’ Courts. Courts of general jurisdiction are subject to similar limitations. Some restrictions must of necessity be imposed, for there are rights and privileges in other forms of action such as the right to trial by jury, which do not exist in proceedings under section 475 of the Judiciary Law (Matter of King, 168 N. Y. 53, 58) or under section 231-a of the Surrogate’s Court Act (Matter of Pardee, 239 App. Div. 876). Hence it is the general rule that the lien arising under section 475 “ pertains to the fee earned by the attorney in the particular case, and proceedings to enforce such a lien are considered as proceedings in rem and may be enforced only against the proceeds of a judgment secured in the particular case.” (Hoxsey v. Hoffpauir, 180 F. 2d 84, 87, cert, denied 339 U. S. 953; Matter of Levine, 154 Misc. 700, 702-703, affd. 247 App. Div. 19.) Entry of a personal judgment against the client is not authorized by that statute. (Matter of Wellman v. Lipkind, 226 App. Div. 106; Sullivan v. *352 McCann, 124 App. Div. 126, 133; Morgan v. Drewry, 3 Misc 2d 440, 444.) Similarly, the authority granted by section 231-a to direct payment of the fee from the client’s inheritance should be limited to such legal services as directly relate to the client’s interest in the estate. Particularly in the case of an income beneficiary, the lien upon the income currently due should protect only the fee for services directly concerned with the estate or trust. A personal judgment against the beneficiary could be enforced only to the extent of such proportions of the current income as are allowed by statute (see Civ. Prac. Act, §§ 684, 792, 793), and certainly a claim based upon extraneous services should not have greater effect than would a Supreme Court judgment based upon such services.
Turning to the stipulation of settlement of March, 1956 and the specification of the services of counsel herein, it is at once apparent that the complicating factor is the broad area covered by the stipulation. The client of the petitioning attorneys is interested only as the income beneficiary of the trusts in the two estates. There are rights of invasion of corpus, but they rest in the discretion of the trustees, subject, of course, to the terms of the stipulations. As beneficiary under the will, the client has no title to the stock of the family corporation or to its debentures. It is true that the amount of income that will accrue to her depends upon the efficient and economical administration of the corporate properties, and to that extent she is beneficially interested in the management of the corporate assets. However, it is patent that in addition to her financial interest as beneficiary of the testamentary trusts, the beneficiary has a close personal interest in the enterprise which had been strictly a family business and with which both her father and her mother had been connected. Unhappily there have been deep and strong differences between her and her brother. The sister demands a measure of corporate control for her branch of the family equal to that exercisable by her brother. To give effect to her desires, the stipulation of settlement provided for the resignation of the directors of the corporation and the appointment of a new board, half of which would be nominees of the income beneficiary. It provided likewise for the resignation of all of the officers except her brother and the election of the beneficiary as one of the new officers. The stipulation contained many detailed provisions for the management of the corporation and the payments to be made to various parties. Many of the terms upon which the parties have agreed, operate ip an area in which the estate would otherwise be a trespasser. *353 Some of the terms and provisions could not be said to relate only to the preservation of income interests, but were designed to permit the income beneficiary to enjoy a degree of control over the corporate activities which the will of this testatrix did not in any way confer upon her.
Some of the services allegedly rendered by counsel were clearly rendered in carrying out the terms of the stipulation of March, 1956, and for these services the petitioners are not entitled to any further compensation. The stipulation was, of course, executed by the parties; not by their attorneys. Nevertheless all attorneys participated in reaching the agreement, and all counsel have led the court and the parties to believe that they are bound by the provisions regulating their fees.
Other services obviously were rendered to the corporation, and were not of the character that normally would be rendered to the beneficiary of a testamentary trust. Indeed, some of the services were not legal services at all. Counsel seek to charge the beneficiary for the services of the secretary of the corporation in preparing the minutes of the meeting and for the services of a director and the secretary in attending the meetings. Other services listed in the petition are: negotiating the salary of their client as an officer of the corporation, assisting in the refinancing of corporate securities, defending the corporation in a lawsuit, arranging for a new managing agent for the corporation’s realty, negotiations for sale of the corporation’s principal asset, and consultations on the “ numerous day to day problems ” which arose in the “ management of 250 Hudson Street Corporation ’ ’. Under this heading are listed such items as ‘ ‘ the making of repairs, instructions to the managing agent, the duties of the bookkeeper and superintendent of the building ”. It may very well be that one who is insistent upon the power to exercise equal control of corporate activities, may make herself liable for legal services and other services rendered to the corporation by entering into a contract to assume such a liability. Services of that nature could not, however, be fairly said to relate to the administration of the trust or to the rights given by the will to the income beneficiary. Under the terms of the will, the testamentary trustees are under a duty to exercise vigilance and care in respect of the corporate affairs. One of the trustees is also one of the directors of the corporation, but there is no suggestion that he, as the person having legal title to the shares, ever requested performance of any such legal services. Services rendered to the corporation for its benefit, at the request of an individual who is not directly *354 a stockholder, are deemed by the court to be wholly outside of the administration of the trusts and to relate to rights and interests beyond those given by the will to the income beneficiary.
Certain other services outlined in the petition were rendered in proceedings in connection with the accounts of the fiduciaries. The motion made by one of the executors in relation to the employment of counsel in the Supreme Court action, and the motion by the special guardian to compel the filing of the account were matters in which counsel represented the income beneficiary in the accounting proceeding. These services were relatively minor in comparison with the general body of services outlined in the petition. Whether such services would be within or beyond the requirements of the stipulation, is a matter upon which the parties might fairly differ. It seems to the court that the attorneys, as well as the client, put to rest any possible difference of opinion on this issue by their agreement for extra compensation in the accounting. The attorneys filed objections to the accounting of the executors herein. Clearly the contest of the accounting was not contemplated by the stipulation. The attorneys charged and were paid an extra compensation of $250. It has not been made to appear that any of these services in the accounting were rendered after the arrangement for payment of additional compensation. It is inconceivable that the attorneys would have made a charge and demanded payment for this particular service in the accounting proceeding without at least placing before the client the warning that other services in the accounting proceeding that had been or were being rendered, were performed with the expectation of further additional pay.
The application for fixation of compensation for services rendered to Charlotte Lawrence or services rendered to 250 Hudson Street Corporation at the request of Charlotte Lawrence is, therefore, denied without prejudice to the right of counsel to proceed to recover upon any contract that may have been made by her. The court does not mean to be understood as implying that such a contract was in fact made. Whether or not a contract to pay for such services may fairly be implied under all of the circumstances is a question of fact upon which this court expresses no opinion.
Under the circumstances, the cross application of the client for an order compelling the attorneys to return moneys paid to them, must also be denied.
The petition also lists certain services that are alleged to have been rendered to the trustees under this will and the will *355 of Benjamin B. Davis. The services relating to the resignation of one trustee, the appointment and qualification of the other and the transfer of assets to him, were clearly within the terms of the stipulation and their compensation was provided for therein. The other services alleged to have been rendered to the trustees are not clearly defined in the petition. Such services as purport to relate to consultation with the new trustee on matters beyond the stipulation are not properly in these proceedings which are entitled in the two executorial accountings and which have been litigated only to that extent. Any claim based upon a new agreement with the successor trustee may be asserted against the trust estates.
Any proper disbursements of the attorneys may be taxed in a bill of disbursements upon settlement of the decree herein.
Submit decree on notice settling the account in accordance with this and the prior decision of the court (N. Y. L. J., Nov. 15,1957, p. 7, col. 5, supra).